Alton J. **LEMON** et al.

v .

David H. **KURTZMAN** et al.

Civ. A. No. 69-1206.

United States District Court,
E. D. Pennsylvania.

Feb. 22, 1972.

Henry W. Sawyer, III, Philadelphia, Pa., for plaintiffs.

William B. Ball, C. Clark Hodgson, Jr., Harrisburg, Pa., for defendant schools.

Henry T. Reath, Robert L. Pratter, Philadelphia, Pa., for Pennsylvania Ass'n of Independent Schools.

Before HASTIE, Circuit Judge, and LUONGO and TROUTMAN, District Judges.

## OPINION AND ORDER

PER CURIAM.

Pursuant to the decision of the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), this Court entered summary judgment in favor of plaintiffs and restrained payments to church-related schools under the Non-public Elementary and Secondary Education Act, 24 P.S. §§ 5601–5609, for services performed or costs incurred subsequent to June 28, 1971[1]. At that time, the issue before the Court was whether church-related schools in Pennsylvania which provided secular educational services to non-public school children during the school year 1970–1971 were entitled to reimbursement for those services rendered, notwithstanding the decision of the Supreme Court in this case. We concluded that the church-related schools were entitled to such reimbursement for the reasons hereinafter stated.

The initial dispute between plaintiffs and defendants concerned the legal standard to be applied in determining this issue. Plaintiffs argued, on the one hand, that once a statute has been declared unconstitutional, it is void *ab initio* and "contracts" which depend upon it for their consideration are void. On the other hand, defendants argued that no such principle of absolute retroactivity exists and the question whether a determination of the unconstitutionality of a statute be retroactively applied must be governed by certain considerations in

---

[1]. On remand from the Supreme Court, we entered the following order:

"AND NOW, this 28th day of December, 1971, upon motion of plaintiffs for summary judgment and permanent injunction, and on the basis of the decision of the United States Supreme Court in Lemon v. Kurtzman, dated June 28, 1971, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745, IT IS HEREBY ORDERED that judgment be entered in favor of plaintiffs, with costs; and IT IS FURTHER ORDERED AND DECREED that the defendants, David H. Kurtzman, as Superintendent of Public Instruction, and Grace Sloan, as State Treasurer of the Commonwealth of Pennsylvania, are restrained and enjoined from making payments for services performed or costs incurred for any period subsequent to June 28, 1971, under and pursuant to Act 109, known as the Nonpublic Elementary and Secondary Education Act (24 PS § 5601–5609) to any school which is church related, controlled by a religious organization or organizations, or has the purpose of propagating and promoting a particular religious faith and conducts its operations to fulfill that purpose.

BY THE COURT

s/William H. Hastie, Circuit Judge
s/Alfred L. Luongo, District Judge
s/E. Mac Troutman, District Judge."

order to obviate any hardship and injustice. Defendants further argue that applying this standard to the facts of this case, the non-public schools are entitled to reimbursement for the school year 1970–1971.

Plaintiffs espouse the "Blackstonian" view [2], which was followed by the Supreme Court in Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886), wherein the Court held that an unconstitutional statute "confers no rights; it imposes no duty; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed". 118 U.S. at 442, 6 S.Ct. at 1125. The general rule underwent a gradual erosion, culminating in the 1930s with Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932) and Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) [3]. In Great Northern, the Court rejected the argument that the Constitution was abridged by the lower court's refusal to apply its ruling retroactively, holding at page 364 of 287 U.S., at page 148 of 53 S.Ct.:

"We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly (cf. Tidal Oil Co. v. Flanagan [263 U.S. 444, 44 S.Ct. 197, 68 L.Ed. 382]) that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted." (citations omitted) [4]

Similarly, in *Chicot*, the Court asserted that broad statements as to the effect of a determination of unconstitutionality, such as that in Norton v. Shelby County, *supra*, must be taken with qualifications. The Court further stated at page 374 of 308 U.S., at page 318 of 60 S.Ct.:

"The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of

2. The Blackstonian view was succinctly summarized in 16 C.J.S. Constitutional Law § 101a where it was stated:
   " . . . [b]roadly, an unconstitutional statute is void, at all times and its invalidity must be recognized or acknowledged for all purposes, or as applied to any state of facts, and is no law, or not a law, or is a nullity, or of no force or effect, or wholly inoperative. Generally speaking, a decision by a competent tribunal that a statute is unconstitutional has the effect of rendering such statute null and void; the act, in legal contemplation, is as inoperative as though it had never been passed or as if the enactment had never been written, and it is regarded as invalid, or void, from the date of enactment, and not only from the date on which it is judicially declared unconstitutional."

3. For a concise history of the evolution of the law on retrospective application, see Linkletter v. Walker, 381 U.S. 618, 622-629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

4. It should be noted that the Pennsylvania courts have rejected an absolute application of the Blackstonian view. See De-Martino v. Zurich Ins. Co., 307 F.Supp. 571, 573 (W.D.Pa.1969); Box Office Pictures v. Board of Finance and Revenue, 402 Pa. 511, 166 A.2d 656 (1961); Buradus v. Gen'l Cement Products Co., 159 Pa.Super. 501, 48 A.2d 883 (1946), aff'd. 356 Pa. 349, 52 A.2d 205 (1947).

its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from the numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."

■ Whatever vestige of the "Blackstonian" view of absolute retroactivity remained after *Great Northern* and *Chicot* was ultimately laid to rest by the Supreme Court in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)[5], wherein the Court held that "the accepted rule today is that in appropriate cases the Court may, in the interest of justice, make the rule prospective". 381 U.S. at 628, 85 S.Ct. at 1737.

Plaintiffs, however, argue that the law does not permit the recognition of the validity of any action taken under a statute which was declared unconstitutional on its face. This contention was aptly answered by the Court in *Linkletter*, which was faced with this identical question at pages 628 and 629 of 381 U.S., at page 1737 of 85 S.Ct.:

"Petitioner contends that our method of resolving those prior cases demonstrates that an absolute rule of retroaction prevails in the area of constitutional adjudication. However, we believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said, 'We think the federal constitution has no voice upon the subject.'"

Consequently, no different standard of retrospective application is to be applied in the area of constitutional adjudication than in any other area of law.

■ In order to determine whether agreements to reimburse church-related schools made prior to the Court's decision in this case may be performed, we must "weigh the merits and demerits in [this] case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Linkletter v. Walker, *supra*, at 629, 85 S.Ct. at 1738. We must further consider "questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application", Chicot County Drainage District v. Baxter State Bank, *supra*, 308 U.S. at 374, 60 S.Ct. at 319, in addition to equitable considerations of hardship and injustice. Great Northern R. Co. v. Sunburst Oil & Refining Co., *supra*, 287 U.S. at 364, 53 S.Ct. 145. Thus, we must examine the decision of the Supreme Court in this case to determine whether prospective application would in any way undermine its underlying basis and its rationale and, if not, then balance the equities between the parties.

■ In *Lemon*, the Supreme Court summarized its three-pronged test applicable where statutes are challenged under the Establishment Clause of the First Amendment:

"First, the statute must have a secular legislative purpose; second, its principle and primary effect must be one that neither advances nor inhibits religion, Board of Education v. Allen, 392 U.S. 236, 243 [88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060] (1968); finally, the statute must not foster 'an excessive government entanglement with religion.' Walz [v. Tax Comm'n, 397 U.S. 664 [, 90 S.Ct. 1409, 25 L.Ed.2d 697] (1970).]"

As to the initial test, the Court held that the Pennsylvania statute had a secular legislative purpose in that it was designed to enhance the quality of the secular education in all schools covered by the compulsory attendance laws. 403 U.S. at 613, 91 S.Ct. 2105, 29 L.Ed.2d

---

5. Although *Linkletter* involved a constitutional issue of criminal procedure, it established that this rule applies to both civil and criminal litigation. Linkletter v. Walker, 381 U.S. at 627, 85 S.Ct. 1731.

745. Secondly, the Court found it unnecessary to decide whether the principal or primary effect of the statute advanced or inhibited religion, 403 U.S. at 613–614, 91 S.Ct. 2105, thus leaving undisturbed this Court's finding that the Act did not have such effect. 310 F. Supp. 35, at 47. Thereafter, the Court clearly manifested that the basis of its decision was the "excessive entanglement between government and religion" generated by the Act. 403 U.S. at 614, 91 S.Ct. at 2112. The articulated objectives of the Court's entanglement doctrine are, first, "to prevent, as far as possible, the intrusion of either [government or religion] into the precincts of the other", 403 U.S. at 614, 91 S.Ct. at 2112, and, secondly, to avoid potential political divisiveness along religious lines. 403 U.S. at 622, 91 S.Ct. 2105. With the decision of the Supreme Court in this case and this Court's subsequent entry of summary judgment in favor of plaintiffs and the issuance of a permanent injunction, restraining any future payment of state funds to non-public schools, the statutory scheme which fostered the excessive entanglement between the state and religion has been dissolved. Thus, permitting the allocated funds to be distributed for the 1970–1971 school year, would in no way offend the entanglement doctrine as enunciated by the Supreme Court. The Court's emphasis on the "resulting relationship between the government and [the] religious authority", 403 U.S. 615, 91 S.Ct. 2112, indicates that its primary concern was the potential for *future* entanglements and encroachments. Since the potential for any future state intrusion into the religious domain has been eliminated, reimbursement for expenditures made prior to the Supreme Court's decision would in no way run afoul of that ruling. Similarly, since the funds have already been collected and allocated, there is no possibility of future political division along religious lines. To summarize, we concluded that to permit such payment would not undermine the Supreme Court's decision or foster the entanglement or the political dissension feared by the Court.

As previously mentioned, we must now balance the equities between the parties in order to determine whether any hardship or injustice would result from either a prospective or retrospective application of the Supreme Court's decision. As to the plaintiffs, there is no indication that a ruling that the decision is to be applied retrospectively would result in any hardship or injustice. The state has already collected the funds to be allocated to the non-public schools and plaintiffs' contribution to this fund has been de minimis.

As to the defendants, the State has entered into "contracts"[6] with some 1,181 non-public elementary and secondary schools. In reliance on these "contracts", the non-public schools adjusted their budgets accordingly and performed the services required by them. There is no doubt that such reliance was justified by the presumption of constitutionality which attached to the Act upon its signing into law, Philadelphia v. Depuy, 431 Pa. 276, 244 A.2d 741 (1968) and, a fortiori, by the decision of this Court, in the first instance, holding the Act constitutional. There is no dispute that to deny the church-related schools any reimbursement for their services rendered would impose upon them a substantial burden which would be difficult

6. Plaintiffs argue that the term "contracts", as applied to these transactions, is misleading and that the payment of funds is, in fact, a subsidy. In the first instance, this Court rejected this argument, 310 F.Supp. at 39–40. In its opinion, the Supreme Court apparently accepted this interpretation. 403 U.S. at 610, 91 S.Ct. 2105. At any rate, whether the reimbursements constituted payments under the contracts or a subsidy makes no difference in our decision. Nor does it lessen the reliance of the non-public schools on the payments or the subsequent hardship upon them if the payments are not made. Defendants have raised the issue of the standing of plaintiffs to argue that these transactions did not constitute contracts. In so holding, we need not decide this issue.

for them to meet. To avoid this hardship, we concluded the funds allocated to reimburse the non-public schools for services rendered in the school year 1970–1971 may be paid.

Accordingly, our order of December 28, 1971, was issued, entering summary judgment in favor of plaintiffs and restraining payments for services performed and costs incurred for any period subsequent to June 28, 1971.

 Before the Court at this time is plaintiffs' motion for supersedeas. Plaintiffs argue that unless the Commonwealth of Pennsylvania is restrained from making payments pursuant to Act 109 for services performed and costs incurred for the school year 1970–1971, the state officials may make the payment, thus mooting the issue and, in essence, denying plaintiffs the right to an effective appeal. Since plaintiffs do not intend to post a supersedeas bond as required by Rule 62(d) F.R.Civ.P., and since plaintiffs are appealing from a final order, in effect, denying them an injunction, restraining payments to church-related schools pursuant to Act 109 for the school year 1970–1971, we have construed this motion for supersedeas as a motion for an "injunction pending appeal" pursuant to Rule 62(c), F.R.Civ.P. In a Rule 62(c) motion, upon a consideration of all the facts, we must ask: "would harm result to either party as a result of the granting or denial of the stay, and were there probable grounds for an appeal to protect rights which might be prejudiced by a refusal to grant the stay?" Shinholt v. Angle, 90 F.2d 297 (5th Cir. 1967). *See also* 7 Moore's Federal Practice 1365. We agree with plaintiffs that if the monies were paid by the state, the issue would be mooted, and plaintiffs would be denied their right to appeal. Accordingly, we will restrain and enjoin any payment under Act 109 for a period of 90 days, thus giving plaintiffs the opportunity to resubmit this question to the Supreme Court.

## ORDER

And now, this 22nd day of February 1972, it is ordered that the defendants David H. Kurtzman (and his successor in office, John Pittinger), Superintendent of Public Instruction, and Grace Sloan, Treasurer of the Commonwealth of Pennsylvania, are restrained and enjoined, for a period of ninety (90) days from the date hereof, from making payments for services performed or costs incurred for any period prior to June 28, 1971, under and pursuant to Act 109, entitled the Non-public Elementary and Secondary Education Act, 24 P.S. §§ 5601–5609, to any school which is church-related, controlled by a religious organization or organizations, or has the purpose of propagating and promoting a particular religious faith and conducts its operations to fulfill that purpose.