ATLANTIC RICHFIELD COMPANY,
Plaintiff,

v.

FEDERAL ENERGY ADMINISTRATION, John O'Leary, Administrator, FEA, Melvin Goldstein, Director of Office of Exceptions and Appeals, FEA, William C. Arntz, Administrator of Region IX, FEA, and Dennis Riley, Defendants.

No. C–77–1209–CBR.

United States District Court,
N. D. California.

Jan. 8, 1979.

F. Bruce Dodge, James P. Bennett, Morrison & Foerster, San Francisco, Cal., for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Dennis G. Linder, Daniella Sapriel, Dept. of Justice, Washington, D. C., G. William Hunter, U. S. Atty., John D. O'Connor, Asst. U. S. Atty., San Francisco, Cal., for federal defendants.

Francis O. Scarpulla, Tracy R. Kirkham, Cooper & Scarpulla, San Francisco, Cal., for defendant Riley.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Plaintiff Atlantic Richfield Company ("ARCO") filed this action on June 6, 1977 against the Federal Energy Administration ("FEA"), certain FEA officials, and Dennis Riley, a former lessee of an ARCO service station. In 1975 the FEA determined that the service station rent that ARCO was charging Riley exceeded the maximum rent permitted by FEA regulations. The FEA ordered ARCO to make refunds and grant credits to Riley to comply with FEA rent regulations. After ARCO made these payments, the Temporary Emergency Court of Appeals held in the case of *Shell Oil Co. v. Federal Energy Administration*, 527 F.2d 1243 (Em.App.1975), *affirming* 400 F.Supp. 964 (S.D.Tex.1975), that when the Economic Stabilization Act of 1970 expired on April 30, 1974, the FEA no longer had the authority to regulate gasoline service station rentals. On July 23, 1976, eight months after the decision of the Temporary Emergency Court of Appeals in *Shell*, ARCO filed an Application for Rescission and/or Modification of the FEA's 1975 orders, seeking to have the orders set aside or declared invalid to the extent that those orders had regulated the rent charged Riley after April 30, 1974. The FEA Office of Exceptions and Appeals denied the application in an order issued on December 6, 1976. The decision reasoned that retroactive application of *Shell* would subject tens of thousands of small firms "to suits for restitution or damages for rental amounts which were specified in private contracts that were superceded [*sic*] by the FEA rent regulations" and that this type of liability "would be so inequitable as to lead to the conclusion that the decision in the *Shell* case should be applied on a prospective basis only." ARCO then filed this suit, seeking recovery of the money refunded or credited to Riley.

### ARCO's Claims

The first claim set forth in ARCO's complaint is a claim against the federal defendants, seeking declaratory relief. ARCO requested that the Court issue a declaratory judgment that the FEA's orders regulating the rent ARCO charged Riley and the FEA's denial of ARCO's application for rescission were unlawful. The federal defendants moved for summary judgment on the first claim. In a Memorandum of Opinion dated February 15, 1978, this Court held that ARCO was not entitled to the relief sought in the first claim because no case or controversy existed between ARCO and the federal defendants. The motions presently before the Court concern ARCO's remaining claims, all asserted against defendant Riley.

ARCO's second claim purportedly "arises under the Economic Stabilization Act, the Emergency Petroleum Allocation Act and

the Federal Energy Administration Act."[1] ARCO alleges that Riley was unjustly enriched by the payments ARCO made pursuant to unlawful FEA orders. ARCO's third and fourth claims state that ARCO is entitled to recover the money paid to Riley under federal common law and state common law theories of unjust enrichment. ARCO has moved for summary judgment on the second, third, and fourth claims.

The fifth claim alleges that ARCO is entitled to recover the sums refunded or credited to Riley pursuant to FEA orders because Riley's failure to pay the rent agreed upon in the leasehold agreement constituted a breach of that contract. ARCO's sixth claim states that when ARCO made refunds and credits to Riley, Riley expressly and impliedly agreed to "repay to Atlantic Richfield with interest all monies he received pursuant to the unlawful FEA order." ARCO bases its sixth claim on a breach of contract theory.

Riley has filed a counter-motion for summary judgment on ARCO's second, third, fourth, fifth, and sixth claims.

ARCO's seventh claim alleges that ARCO mistakenly made certain duplicate credits and payments to Riley, that Riley received these payments and credits with knowledge of the mistake, and that Riley would be unjustly enriched if permitted to retain these funds. Neither ARCO nor Riley has moved for summary judgment on the seventh claim.

*Impact of the Shell Decision*

In *Shell Oil Co. v. Federal Energy Administration, supra,* 527 F.2d 1243, the court determined that the FEA did not have the authority to regulate leasehold rentals in the petroleum industry after the Economic Stabilization Act ("ESA") expired on April 30, 1974. The ESA had explicitly authorized the President or his delegates to issue regulations stabilizing "prices, rents, wages, and salaries." 12 U.S.C. § 1904, note § 203. Regulations controlling rents charged to those leasing service stations were published by the Cost of Living Council in August 1973, 6 C.F.R. § 150.360 (38 Fed.Reg. 22536, Aug. 22, 1973), and were later incorporated by the Federal Energy Office ("FEO") into its regulations, promulgated pursuant to authority delegated to the FEO by the Chairman of the Cost of Living Council.[2]

The FEO's stated authority to regulate rentals expired on April 30, 1974, the expiration date of the ESA. 12 U.S.C. § 1904 note § 218. However, the FEA, successor to the FEO,[3] continued to regulate certain rentals after that date. The FEA concluded that it could do so pursuant to its authority to regulate petroleum product prices under the provisions of the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. §§ 751 *et seq.* The FEA took the position that rents charged to service station operators are so inextricably interwoven with the prices paid for gasoline that the FEA's statutory mandate to regulate petroleum prices required the continued regulation of rents charged for service station leases. *Shell Oil Co. v. Federal Energy Administration, supra,* 400 F.Supp. at 966–967. This argument was rejected by both the district court and the Temporary Emergency Court of Appeals in the *Shell* case.

Although *Shell* held that the FEA rent control regulations were beyond the statu-

---

1. ARCO's second claim is apparently brought under the specific jurisdictional provision of the Emergency Petroleum Allocation Act. *See* note 10, *infra.* Since the amount in controversy exceeds $10,000, 28 U.S.C. § 1331's grant of federal question jurisdiction applies to both the second and third claims. This Court has pendent jurisdiction over ARCO's fourth, fifth, and sixth claims, as they arise out of the same transaction and subject matter underlying the second and third claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

2. For a more thorough explanation of the relevant statutes, agency regulations, and executive orders, see *Shell Oil Co. v. Federal Energy Administration,* 400 F.Supp. 964 (S.D.Tex. 1975), and *Shell Oil Co. v. Federal Energy Administration,* 527 F.2d 1243 (Em.App.1975).

3. The FEO was succeeded by the FEA on June 27, 1974, pursuant to the Federal Energy Administration Act of 1974, 15 U.S.C. §§ 761 *et seq.*

tory authority granted by the EPAA and that any orders issued under those regulations were therefore "null and void," 527 F.2d at 1247, the *Shell* decision did not consider the issue presented in this case. Since *Shell* did not involve a lessor seeking a refund of money paid in compliance with an FEA rent control order, neither the district court nor the court of appeals considered the rights and liabilities of private parties who acted in accordance with FEA orders issued pursuant to the unauthorized regulations.

In a prior Memorandum of Opinion, this Court found that the orders directing ARCO to comply with FEA rent regulations and to refund and credit money to Riley were in excess of the FEA's statutory authority insofar as they regulated rents after April 30, 1974. However, that opinion also stated that although the orders were unlawful, ARCO was not necessarily entitled to recover the money paid Riley pursuant to those orders:

> "The determinative issue that remains is whether the Court should now, more than two years later, reach back and undo actions taken pursuant to the orders. *Shell* does not necessarily require that Riley must bear the consequences of the government's mistake." (Memorandum of Opinion dated Feb. 15, 1978, at p. 11.)

This Court has concluded that the *Shell* decision should not be applied retroactively to require Riley to refund the money paid by ARCO, for, on the facts of this case, retroactive application of *Shell* to undo a past transaction would be inequitable.

### The Doctrine of Nonretroactivity

■ The doctrine of nonretroactivity recognizes that actions taken under judicial decisions that are later overruled or under statutes later declared unconstitutional need not always be undone. ARCO argues that the FEA orders in this case were "void *ab initio*" and that restitution of the money Riley unlawfully received is therefore mandated. However, this argument ignores the fact that the FEA orders were based on existing regulations, which both Riley and the FEA believed to be lawful. In *Lemon v. Kurtzman*, 411 U.S. 192, 198, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1973), the Supreme Court rejected a similar theory:

> "[A]ppellants insist that * * * an unconstitutional statute 'confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.' *Norton v. Shelby County*, 118 U.S. 425, 442, [6 S.Ct. 1121, 30 L.Ed. 178] (1886)."

The Supreme Court pointed out that the *Norton* doctrine is no longer adhered to, for the courts must take into account a variety of factors in order to determine the appropriate effect of a new judicial ruling on prior conduct:

> "However appealing the logic of *Norton* may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity." 411 U.S. at 199, 93 S.Ct. at 1468.

Although the doctrine of nonretroactivity has most often been considered in criminal cases, the doctrine has also been applied in civil litigation, in both constitutional and nonconstitutional cases. Despite the great variety of circumstances in which the doctrine of nonretroactivity arises, the question remains the same:

> " * * * [Whether] we should reach back to disturb or to attach legal consequence to patterns of conduct premised either on unlawful statutes or on a different understanding of the controlling judge-made law from the rule that ultimately prevailed." 411 U.S. at 198, 93 S.Ct. at 1468.

The standard to be applied to determine whether a decision should be given retroactive effect[4] was set forth in *Chevron Oil*

---

4. A judicial decision may be applied "nonretroactively" in a variety of ways. For example, the decision may be only applied to cases filed after the date of the opinion, or it may be that

*Co. v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971):

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, *e.g., Hanover Shoe v. United Shoe Machinery Corp., supra,* [392 U.S.] at 496, [88 S.Ct. 2224, 20 L.Ed.2d 1231] or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, *e. g., Allen v. State Board of Elections, supra,* [393 U.S.] at 572, [89 S.Ct. 817, 22 L.Ed.2d 1.] Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker, supra,* [381 U.S.] at 629, [85 S.Ct. 1731, 14 L.Ed.2d 601.] Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' *Cipriano v. City of Houma, supra,* [395 U.S.] at 706, [89 S.Ct. 1897]."

■ Applying this standard to ARCO's suit against Riley, this Court concludes that the *Shell* decision should not be applied retroactively to require Riley to repay the money received from ARCO.

### The Chevron Test

The first factor outlined in *Chevron* was whether the decision to be applied nonretroactively established a new principle of law, either by overruling clear past precedent or

by deciding an issue of first impression whose resolution was not clearly foreshadowed. 404 U.S. at 106, 92 S.Ct. 349. This factor addresses the question of whether the party seeking nonretroactivity was entitled to rely on the prior state of the law.

The *Shell* case did decide an issue of first impression which this Court finds to be an issue whose resolution was not clearly foreshadowed. Considering the reliance issue, the Supreme Court stated in *Lemon v. Kurtzman, supra,* 411 U.S. at 207, 93 S.Ct. at 1472:

"[T]his is not a case where it could be said that appellees acted in bad faith or that they relied on a plainly unlawful statute. In this case, even the clarity of hindsight is not persuasive that the constitutional resolution of *Lemon I* could be predicted with assurance sufficient to undermine appellees' reliance on [the statute]."

■ ARCO argues that Riley should not have relied on FEA regulations because ARCO had taken the position that the regulations and orders were unlawful. This argument is much like that made by appellant in *Lemon v. Kurtzman.* In that case the Supreme Court found that appellees were entitled to rely on the validity of a state statute even during the pendency of the suit in which the constitutional validity of that statute was being attacked. The Court rejected the argument that one cannot rely on an "untested" statute whose validity has never been authoritatively determined. It refused to

" * * * hold those charged with executing state legislative directives to the peril of having their arrangements unraveled if they act before there has been an authoritative judicial determination that the governing legislation is constitutional." 411 U.S. at 207, 93 S.Ct. at 1473.

---

the decision is not applied to transactions that in some way were final at the time the case was decided. *See, e. g., Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (decision declaring statute unconstitutional did not invalidate bonds sold or issued

prior to the decision pursuant to final authorization); *Jerry Vogel Music Co. v. Edward B. Marks Music Corp.,* 425 F.2d 834 (2 Cir. 1969) (assignment that was lawful when made was not invalidated by a subsequent change in the law).

Similarly, we find that Riley was entitled to presume that the FEA's rent regulations were valid and within the agency's authority, although no court had yet ruled on the validity of those regulations.

The second factor to be considered is whether retroactive application of the *Shell* decision would further or retard the purposes of the statute in question. In *Chevron* the Supreme Court considered whether to apply retroactively *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), a decision holding that state statutes of limitations rather than the admiralty doctrine of laches apply to suits brought under the Outer Continental Shelf Lands Act. The Court concluded in *Chevron* that *Rodrigue* should not be applied retroactively to bar plaintiff's suit, filed prior to the date of the *Rodrigue* decision. Since one purpose of the Lands Act's absorption of state law was to aid injured plaintiffs by affording them comprehensive and familiar remedies, the Court concluded that applying *Rodrigue* retroactively to bar the plaintiff's suit would be "inimical to the beneficent purpose of the Congress." 404 U.S. at 108, 92 S.Ct. at 356.

In this case, applying *Shell* retroactively to require repayment of money received under unlawful FEA orders would be inimical to one of the stated purposes of the EPAA:

"to preserve the competitive viability of independent refiners, small refiners, nonbranded independent marketers, and branded independent marketers." 15 U.S.C. § 753(b)(1)(D).

Although the court concluded in *Shell* that Congress in passing the EPAA did not intend to extend the FEA's rent regulation power past the expiration date of the ESA, this does not establish that ordering restitution in cases such as this would further any of the purposes of the EPAA, nor that failing to order such relief would retard the purposes of the Act.

The third part of the *Chevron* test is whether retroactive application of *Shell* to the extent of requiring restitution would produce a substantial inequitable result. On the facts of this case, requiring restitution would be inequitable. Nonretroactivity analysis demands consideration of "particular relations * * * and particular conduct * * * of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly * * *." *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 319, 84 L.Ed. 329 (1940). In this case, Riley was entitled to consider the transaction final after ARCO made refunds and credits pursuant to FEA orders, rather than seeking a stay of those orders pending judicial review of the administrative agency's decision.[5] ARCO chose to comply with the FEA refund order, although Section 211(d)(2) of the ESA, 12 U.S.C. § 1904 note § 211(d)(2), incorporated by reference into the EPAA, 15 U.S.C. § 754, provided:

"A district court of the United States or the Temporary Emergency Court of Appeals may enjoin temporarily or permanently the application of a particular regulation or order issued under this title to a person who is a party to litigation before it."

This procedure was designed "to provide relief for a particular person who may be aggrieved by the operation of this program during the period in which he is attempting to establish his legal position * * *." S.Rep.No.92–507, 92d Cong., 1st Sess., *reprinted in* [1971] U.S.Code Cong. & Admin. News, pp. 2283, 2293–2294. Rather than seeking judicial review of the FEA orders, ARCO complied with the order and only later asserted a claim for restitution, after the Temporary Emergency Court of Appeals held in *Shell* that the FEA's power to

---

5. ARCO's failure to seek judicial review of the FEA orders is one of the equitable considerations affecting the resolution of the retroactivity issue. This factor takes into account the interest in upholding the finality of earlier proceedings. Unlike *Chicot County Drainage Dist.*

*v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), however, there was no *res judicata* defense raised in this case, presumably because there was never a judicial ruling on the validity of the FEA orders.

regulate rent had expired on April 30, 1974.[6]

In *National Ass'n of Broadcasters v. F. C. C.,* 180 U.S.App.D.C. 259, 554 F.2d 1118 (1976), the Court of Appeals for the District of Columbia Circuit considered the effect of petitioners' failure to seek a refund of contested fees in their earlier suit challenging the fee schedule, rather than in a separate suit for a refund. The court remarked:

"Absent extenuating circumstances, we would normally be inclined to hold that they had thereby waived any further challenge to the fees they were contesting in that action." 554 F.2d at 1127.

Although the Court did not apply the doctrine of waiver, it found the doctrine inappropriate only because the FCC had led petitioners to believe that refunds would be paid by the FCC on its own initiative.

In *Lemon v. Kurtzman, supra,* the Supreme Court's affirmance of the district court's denial of retroactive relief was based in large part on the fact that appellants had not sought interim injunctive relief during the pendency of their suit. Appellants had challenged the constitutionality of a Pennsylvania statutory program to reimburse private sectarian schools for certain secular educational services. After the Supreme Court held the statute unconstitutional in *Lemon v. Kurtzman,* 403 U.S. 602,

91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) ("*Lemon I*"), reversing the lower court's ruling, the district court on remand entered summary judgment for appellants but permitted the state to reimburse the appellee schools for educational services they had provided prior to the *Lemon I* decision.[7] *Lemon v. Kurtzman,* 348 F.Supp. 300 (E.D. Pa.1972). Reviewing the district court's ruling, the Supreme Court concluded that:

" * * * [A]ppellants' tactical choice not to press for interim injunctive suspension of payments or contracts during the pendency of the *Lemon I* litigation may well have encouraged the appellee schools to incur detriments in reliance upon reimbursement by the State under Act 109. * * * [F]or nearly two years, the State and the schools proceeded to act on the assumption that appellants would continue to adhere to a 'sensible recognition of the practical realities of the situation.' " 411 U.S. at 204–205, 93 S.Ct. at 1471.

The Court did not require detailed evidence of actual reliance by each school. Since the schools had already entered into contracts with the state providing for reimbursement for certain educational services and had already performed those services, the Supreme Court found that the district court's finding of reliance was amply supported, although counsel for appellants had argued

---

**6.** ARCO's claims against Riley, the subject of this opinion, clearly cannot be characterized as a direct appeal from the FEA's original order. The first claim set forth in ARCO's complaint, seeking a declaratory judgment that the FEA orders were unlawful, was dismissed in an earlier opinion, as no case or controversy existed between ARCO and the FEA at the time the suit was filed. That claim could not have been considered a timely appeal from the FEA's 1975 order, as the suit was not filed until 1977. ARCO has pointed out in an earlier memorandum filed with the Court that the EPAA did not state a time limit for seeking judicial review of agency orders based upon that statute. The EPAA incorporated the judicial review procedures of § 211 of the ESA. 15 U.S.C. § 754(a). Section 211 provides that review of FEA actions is initiated by filing a complaint in district court, but fails to provide a time limit for seeking review. 12 U.S.C. § 1904 note § 211.

This case does not require a determination of the precise time limit applicable to appeals

from FEA orders brought under Section 211. Since the usual time period for appeal from administrative orders is 60 days, *see, e. g.,* 28 U.S.C. § 2344, a two-year delay would certainly make the appeal untimely. The legislative history of Section 211 shows that Congress was concerned with ensuring prompt review of agency orders issued under the ESA. S.Rep. No.92–507, 92d Cong., 1st Sess., *reprinted in* [1971] U.S.Code Cong. & Admin.News, pp. 2283, 2292–2293.

**7.** Several other courts have followed *Lemon v. Kurtzman* in refusing to order retroactive relief where funds were paid under a statute later declared unconstitutional. *See, e. g., Roemer v. Board of Public Works,* 387 F.Supp. 1282 (D.Md.1974), *affirmed,* 426 U.S. 736, 96 S.Ct. 2337, 49 L.Ed.2d 179 (1976); *Americans United for the Separation of Church and State v. Board of Education,* 369 F.Supp. 1059 (E.D.Ky. 1974).

below that the schools had simply "continued to do what they were doing before." 411 U.S. at 204, n.5, 93 S.Ct. at 1471, n.5. The Court did not require evidence that the sums expended by each school would not have been spent but for the expectation of reimbursement. In considering whether retroactive relief would be inequitable, the Court remarked:

"The District Court found that there was no dispute 'that to deny the church-related schools any reimbursement for their services rendered would impose upon them a substantial burden which would be difficult for them to meet. [Citation and footnote omitted.]

\* \* \* \* \* \*

" \* \* \* On this record the District Court could reasonably find reliance on the part of the appellee schools and reasonably could conclude that no more was needed to demonstrate retrospectively the degree of their reliance." 411 U.S. at 204–206, 93 S.Ct. at 1471–1472.

In this case, requiring Riley to refund the $23,200 sought by ARCO in its motion for summary judgment would unquestionably impose a substantial financial burden on Riley. This Court has concluded that such a burden would be inequitable on the facts of this case. Although ARCO argues that Riley did not rely on the validity of the FEA orders, ARCO construes the reliance test far too narrowly. It is undisputed that Riley deposited the money received from ARCO in his business account and used it to pay expenses incurred in the operation of his service station. ARCO contends that retroactive relief would not be inequitable because Riley is unable to show that he made specific business decisions in reliance on his belief that he was entitled to retain the money paid by ARCO. Riley, however, contends that he conducted his business re-

lying on the FEA's orders. Undoubtedly, the owner of a small business makes numerous business decisions that are dependent on his financial position. Viewed in light of Riley's financial records, submitted in support of his motion for summary judgment, it is apparent that the money received from ARCO represented a significant sum to Riley. Just as the Supreme Court in *Lemon v. Kurtzman* did not require proof that the appellee schools would not have made particular expenditures but for their expectation of reimbursement, this Court does not believe that a finding of reliance must be based on documentation of specific instances of actual reliance. As the Supreme Court noted in *Lemon v. Kurtzman*, a "determination of actual reliance would be subtle, premised largely on credibility and not on facts of record." 411 U.S. at 205, n.6, 93 S.Ct. at 1472, n.6. Yet the difficulty of proving specific instances of actual reliance did not preclude a finding, based on the totality of the record, that the appellees in that case had relied on the prior state of the law.

Finally, in considering the inequity of applying the *Shell* decision retroactively, one must recognize that ARCO's suit is far different from a suit brought against a government agency on the ground that the agency's actions were unlawful. Although even in those cases retroactivity is not necessarily appropriate,[8] the equities weigh more heavily in favor of granting retroactive relief where the party bearing the burden of retroactive application of a decision can be charged with having acted unlawfully. In this case, Riley was not at fault. The FEA erred in construing the EPAA as granting it the implicit authority to regulate rentals, but the FEA is not the party who would be harmed by a finding of retroactivity.

8. In many cases involving regulations ruled invalid because they were not promulgated under proper procedures, the court invalidating the regulation has determined that acts taken under the invalid regulation need not be undone or even that the regulation will continue in effect until valid regulations can be promulgated. *See, e. g., Rodway v. United States Dept. of Agriculture*, 168 U.S.App.D.C. 387, 514 F.2d 809, 817 (1975); *Consumers Union of the Unit-* ed States, Inc. v. Sawhill, 393 F.Supp. 639 (D.D.C.1975), *aff'd sub nom. Consumers Union of the United States, Inc. v. Zarb*, 523 F.2d 1404 (Emp.App.1975). *See also Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974) (ruling of invalidity regarding Parole Board rules did not affect validity of past Board determinations based upon those rules).

*Riley's Motion for Summary Judgment*

Having concluded that *Shell* should not be applied retroactively to this case, this Court finds that ARCO is not entitled to the relief sought in the second, third, fourth, fifth, and sixth claims of its complaint. In holding that *Shell* should not be given retroactive effect, the Court has determined that the FEA refund orders involved in this case should be treated as lawful, although the opinion in *Shell* subsequently established that they were beyond the agency's authority. This conclusion precludes any recovery by ARCO.

Had the orders been lawful, ARCO would have no claim against Riley for unjust enrichment. ARCO's common-law claims for restitution, founded on a theory of unjust enrichment, depend upon a finding that Riley was not lawfully entitled to receive the money and that equitable considerations demand that he repay that money.[9] Since the *Chevron* test, focusing in large part on equitable factors, establishes that *Shell* does

not require payments already made under FEA orders to be undone, ARCO clearly cannot prevail on an unjust enrichment theory.

ARCO also seeks relief under various statutory provisions. The complaint states that ARCO's second claim "arises under the Economic Stabilization Act, the Emergency Petroleum Allocation Act and the Federal Energy Administration Act," and ARCO contends that these statutes should be interpreted as providing for refunds of moneys paid under unlawful FEA orders. In fact, the statutes do not specifically address this problem and certainly do not mandate payment of a refund in this case.[10] Since the statutes do not expressly provide for refunds,[11] ARCO's claim actually is directed to the equity powers of the Court rather than being based on a statutory right to such relief. *See Moss v. Civil Aeronautics Board*, 172 U.S.App.D.C. 198, 521 F.2d 298, 304 (1975), *cert. denied sub nom. Roberts v. Civil Aeronautics Board*, 424 U.S. 966, 96 S.Ct. 1460, 47 L.Ed.2d 732 (1976). Thus,

9. *See Moss v. Civil Aeronautics Board*, 172 U.S.App.D.C. 198, 521 F.2d 298, 304 (1975), *cert. denied sub nom. Roberts v. Civil Aeronautics Board*, 424 U.S. 966, 96 S.Ct. 1460, 47 L.Ed.2d 732 (1976):

> " 'A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function. . . . The claimant, to prevail, must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it.' " (Quoting Justice Cardozo in *Atlantic Coast Line R. R. v. Florida*, 295 U.S. 301, 309, 55 S.Ct. 713, 716, 79 L.Ed. 1451 (1935).)

10. In the memorandum filed in support of its motion for summary judgment, ARCO relies on the language of Section 210(a) of the ESA, 12 U.S.C. § 1904, note § 210(a), incorporated by reference into the EPAA, 15 U.S.C. § 754(a)(1):

> "(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages."

Section 211(a) of the ESA, also incorporated into the EPAA, provides:

> "(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, not withstanding the amount in controversy * * *."

ARCO asserts that it has suffered a "legal wrong" within the meaning of Section 210(a), that the federal district courts have exclusive jurisdiction over such cases under Section 211, and that this Court has the inherent equitable power to grant the relief sought. This Court has jurisdiction over the unjust enrichment claim whether it is viewed as arising under the EPAA or under federal common law. Since the amount in controversy exceeds $10,000, federal question jurisdiction is present under 28 U.S.C. § 1331. Although ARCO correctly asserts that the Court has jurisdiction and has the power to grant the relief sought, ARCO has not established that it is entitled to relief.

11. Compare the National Gas Act, which provides that the Commissioner may in his discretion order refunds where unlawful rates have been collected in prior years. 15 U.S.C. § 717c(e). *See In re Hugoton-Anadarko Rate Case*, 466 F.2d 974, 990–991 (9 Cir. 1972). The Federal Power Act, 16 U.S.C. § 824d(e), contains a similar provision. *See Indiana & Michigan Electric Co. v. Federal Power Comm'n*, 163 U.S.App.D.C. 334, 502 F.2d 336, 345 (1974), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975).

Arco cannot prevail on a "statutory" unjust enrichment theory once it has been denied relief on its common law unjust enrichment claims.

ARCO's fifth claim alleges breach of the leasehold agreement. The claim is clearly predicated on the view that *Shell* must be applied retroactively, for Riley could only be held liable for breaching the rental agreement if this Court refused to give any legal effect to the FEA's rent regulation orders. Since the ruling on nonretroactivity indicates that Riley was entitled to rely on the validity of the FEA's orders after ARCO complied with those orders, rather than seeking judicial review, Riley cannot be held liable for failing to adhere to contract terms that conflicted with the FEA's orders.

ARCO has opposed Riley's motion for summary judgment on the breach of contract claims on the ground that there are disputed issues of fact with respect to these claims. ARCO has not stated, however, which factual issues are in dispute. Both parties have moved for summary judgment on the unjust enrichment claims, and both agree that the facts set forth earlier in this opinion are undisputed. On the basis of those facts, ARCO is not entitled to relief on the fifth and sixth claims stated in its complaint. Given the resolution of the retroactivity question in Riley's favor, there are no material issues of fact in dispute regarding these claims.

With respect to ARCO's sixth claim, Riley contends that he never expressly or impliedly agreed to repay any of the money he received from ARCO pursuant to FEA orders.[12] Riley correctly asserts, however, that even if he had made such a promise, it would not have resulted in a contractual commitment. Unless this Court refuses to

attach any legal significance to the FEA's orders, it cannot be said that ARCO furnished consideration for Riley's alleged promise, since "doing or promising to do what one is already legally bound to do cannot be consideration for a promise." Witkin, *Summary of California Law* (8th ed. 1973), 154–155.[13]

Accordingly, IT IS HEREBY ORDERED that plaintiff ARCO's motion for summary judgment on the second, third, and fourth claims stated in its complaint is denied.

IT IS HEREBY FURTHER ORDERED that defendant Riley's motion for summary judgment on the second, third, fourth, fifth, and sixth claims is granted.

IT IS HEREBY FURTHER ORDERED that counsel for defendant Riley shall prepare an appropriate form of judgment and submit it to the Court for execution within ten (10) days of the date of this Memorandum of Opinion.

---

**12.** In support of his motion for summary judgment on the sixth claim, Riley submitted an affidavit by a former ARCO employee and deposition testimony by Riley indicating that Riley had not expressly or impliedly agreed to repay the money paid by ARCO, although Riley was aware that ARCO might contest the validity of the FEA order. The Court need not consider whether these unopposed affidavits show that there are no genuine issues of material fact regarding the existence of such an agreement,

since the Court's holding on the retroactivity question establishes that any promise on Riley's part to repay the money should be considered an unenforceable promise.

**13.** California Civil Code § 1605 defines "consideration" as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled * * *."