**WHITE BEAR LAKE CARE CENTER, INC., Appellant,**

v.

**MINNESOTA DEPARTMENT OF PUBLIC WELFARE, Respondent.**

No. 81–630.

Supreme Court of Minnesota.

May 14, 1982.

Broeker, Hartfeldt, Hedges & Grant and Barbara Blumer, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Paul G. Zerby, Sp. Asst. Atty. Gen., Minneapolis, for respondent.

OTIS, Justice.

White Bear Lake Care Center, Inc., appeals from an order of the district court affirming a decision of the Commissioner of Public Welfare which disallowed its rate of medical assistance reimbursement for fiscal 1976. The sole issue raised is whether the Department of Public Welfare's practice of computing cost change implementation on a per diem basis constitutes a permissible interpretation of 12 MCAR § 2.049 (1978) (DPW Rule 49) or an improper promulgation of a new rule. We conclude that calculations made using the per diem method cannot be enforced because the per diem method is a rule which has not been promulgated in accordance with the Administrative Procedure Act. Accordingly, we reverse.

DPW Rule 49 governs reimbursement of nursing homes for care provided to Medicaid residents. Reimbursement is according to a per diem rate. The rate essentially is determined by dividing the operator's budget for the current year, composed of historical costs for the past fiscal year plus projected known cost changes for the current year,[1] by the total number of patient

---

1. Allowable cost change items are specified in 12 MCAR § 2.049 B.1.c (1978) and include, for example, salary and wages, facilities and equip-

days for the past fiscal year. The per diem yielded by this formula is applied to actual patient days in the current year. Reimbursement is made on a monthly basis. Amounts allowed as increases in the budget but not actually spent are recouped pursuant to 12 MCAR § 2.049 B.1.c(2) (1978) which provides: "If known cost changes calculated . . . do not in fact occur, the welfare rate will similarly be subject to adjustment." If, however, the actual cost increases exceed the known cost changes calculated, no adjustment is made. The statement of objectives found at the beginning of DPW Rule 49 states: "It is not intended that the regulations provide for reimbursement of actual cost through retroactive settlement. 12 MCAR § 2.049 A.2 (1978).

This controversy centers on the department's method of determining whether known cost changes have occurred. White Bear's cost report for fiscal year ending September 30, 1975 showed a historical per day cost of $27.68 for skilled care and $24.91 for intermediate care. Known cost changes were $3.63 and $3.55 respectively. There were 11,176 patient days of skilled care and 17,820 patient days of intermediate care. The department approved rates of $28.19 and $23.21, the private pay rates.[2] When White Bear increased private pay rates in March 1976 the department also increased the per diem to the same figures—$30.08 and $26.67.

White Bear's cost report for fiscal year ending September 30, 1976 showed a historical per day cost of $28.67 for skilled care and $25.50 for intermediate care. The difference between the 1976 projected per diem based on 1975 figures and the actual 1976 per diem was due to White Bear's addition of beds. Patient occupancy increased to 27,191 days of skilled care and 23,486 days of intermediate care, nearly double that of the prior year. Thus, although White Bear incurred all of its projected cost increases and, in fact, exceeded those projections substantially, the increase in patients and, therefore, fees, more than covered these increases. The department reviewed the implementation of cost changes on a per diem basis because of the substantial increase in occupancy and determined that the changes had not been implemented in the amount of $.79 per day for variable costs and $1.44 for fixed costs. The department notified White Bear that an overpayment had occurred. The department has routinely reviewed cost change implementation on a per diem basis whenever a nursing home has had a significant change in patient days between fiscal periods. In cases of decreased occupancy this has worked to the nursing home's advantages.

■ Minn.Stat. § 256B.04, subd. 2 (1980) authorizes the department to make rules concerning various aspects of the medical assistance system including establishing a rate formula and obtaining financial data necessary to application of the formula. Minn.Stat. §§ 256B.41 and 256B.27 (1980). It is undisputed that DPW Rule 49 is an authorized and properly promulgated legislative rule. Like statutes, administrative regulations are governed by general rules of construction. 1A C. Sands, Sutherland Statutory Construction § 31.06 (1972). Thus, if the plain meaning of DPW Rule 49 is to permit per diem calculation of cost change implementation, or if the rule is ambiguous and longstanding administrative interpretation supports per diem calculation, the department should prevail. 2 K. Davis, Administrative Law Treatise, § 7.22 (2 ed. 1979). If, however, neither of the above two situations exists decision in favor of White Bear is required. The challenged practice is clearly within the statutory definition of a "rule": "[E]very agency statement of general applicability and future effect, including the amendment, suspension or repeal thereof, made to implement or make specific the law enforced or admin-

ment, utilities, insurance, depreciation and interest.

2. Allowable costs were $31.31 for skilled care and $28.46 for intermediate care but 12 MCAR § 2.049 B.4.a (1978) specifies that the welfare rate cannot exceed the private pay rate.

istered by it or to govern its organization or procedure." Minn.Stat. § 15.0411, subd. 3 (1980). Rules must be adopted in accordance with specific notice and comment procedures established by statute, Minn.Stat. § 15.0412 (1980), and the failure to comply with necessary procedures results in invalidity of the rule. *Johnson Brothers Wholesale Liquor Co. v. Novak*, 295 N.W.2d 238 (Minn.1980).

■ The department insists that the plain language of DPW Rule 49 compels the rate adjustment made. The substance of the argument is that the entire rule is designed to establish a method for computing a "per diem welfare rate" and that, therefore, the recoupment provision, which refers to adjustment of the "welfare rate," necessarily requires a "per diem" calculation of whether cost changes were implemented. We are unpersuaded by this argument for several reasons. First, DPW Rule 49's method for computing the welfare rate specifies that the patient day figure used be that of the prior fiscal year. No mention is made of taking into account current occupancy rates. White Bear points out that the department could have made provision for this in the rule as evidenced by its nearly identical rule in the related context of assistance for the mentally retarded. There the provision governing allowance for known cost changes specifically permits consideration of the "cost effect of changes in occupancy levels based on average occupancy for the last three months of the fiscal period covered by the historical cost portion of the welfare per diem rate." 12 MCAR § 2.052 B.1.c(i)(j). Second, the recoupment provision by its terms applies when known cost changes "do not in fact occur." Here the monies projected, plus more, were expended. Third, the rule itself states that it is not intended to establish a system of reimbursement of actual cost through retroactive settlement.

The department also contends that DPW Rule 49 is, at worst, ambiguous and should be construed consistently with agency interpretation. The rule permits "allowance for known cost changes" in computing the per diem welfare rate. Future cost increases or decreases "must be added to or deducted from the historical rate." These changes are projected in gross dollar amounts. If the changes do not in fact occur the welfare rate is readjusted and repayment required. It is clear that in this case the gross dollar cost changes did, in fact, occur. The language of the rule indicates that these cost changes figure into the welfare rate with reference to the historical rate, *i.e.*, reasonable costs divided by patient days from the preceding fiscal year. There is no suggestion in the language that present occupancy rates are in any way involved in the calculation and we, therefore, find no ambiguity.

The department relies heavily on our decision in *Koronis Manor Nursing Home v. Department of Public Welfare*, 311 Minn. 375, 380, 249 N.W.2d 448, 451 (1976) (footnote omitted), in which we held, without finding a regulation ambiguous, that the department has "implicit power to impose reasonable standards so as to effectuate the department's purposes." That case involved a regulation concerning apportionment of allowable costs between two facilities (a hospital and a nursing home) which shared some expenses but were independent for purposes of rate determination. The regulation expressly allowed the facility to choose one of three cost allocation methods. The hospital used one method which weighed costs heavily in its favor while the nursing home used another which operated to its advantage. The department disallowed the nursing home's method and required that it use the same method as the hospital. The department subsequently amended its rule to require reasonable identification of costs to care level regardless of the allocation method selected. It was clear in *Koronis* that the nursing home's purpose was to circumvent the department's rate determining formula and that both the enabling statute and agency regulations intended that such form-over-substance transactions not be permitted. There is no comparable conduct on the part of White Bear that would justify exercise of such implicit power to "prudently administer" the medical assistance program.

Reversed.