In the Matter of the Contested Case of
**SURF AND SAND NURSING
HOME, Relator,**

v.

**DEPARTMENT OF HUMAN
SERVICES, Respondent.**

No. CO–87–1754.

Court of Appeals of Minnesota.

April 12, 1988.
Review Denied June 23, 1988.

K. Craig Wildfang, Grossman, Karlins, Siegel, Brill, Greupner & Duffy, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Julie K. Harris, Spec. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and NORTON and MULALLY *, JJ.

## OPINION

FOLEY, Judge.

Relator Surf and Sand Nursing Home brought an administrative appeal challenging adjustments that respondent Department of Human Services made to its medical assistance rates established for the 1981 rate year. At the hearing, the only unresolved rate issue was the proper method of calculating "known cost change paybacks." The administrative law judge concluded that *White Bear Lake Care Center, Inc. v. Minnesota Department of Public Welfare*, 319 N.W.2d 7 (Minn.1982), should be applied retroactively and that the gross dollar method of calculating the payback should be used. The Department adopted his recommendations. Surf and Sand seeks review of this decision. Surf and Sand also asserts that the administrative law judge erred when he denied its motion to depose certain Department personnel. We affirm.

## FACTS

Surf and Sand is a 56–bed nursing home located in Duluth, Minnesota. William Buchanan owns and is the administrator of the facility. During the relevant time period, Surf and Sand participated in the Minnesota Medical Assistance Program. The medical assistance rates for the care of needy persons were calculated by the Department pursuant to 12 MCAR § 2.049 ("Rule 49") (recodified in 1983 as Minn.R. 9510.0010–.0480). Under Rule 49, the Department calculated each nursing home's allowable per diem rate annually, based upon an annual cost report which the nursing home submitted to the Department.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

The per diem rate is calculated by taking the nursing home's costs during the prior year ("historical costs" during the "historical year"), adding or subtracting projected increases or decreases for the next year ("known costs changes" in the "rate year") and dividing the total by the patient days incurred in the historical year. Minn.R. 9510.0030. If the known cost changes projected by a nursing home do not occur, the nursing home rates are subject to an adjustment ("payback"). Minn.R. 9510.-0030, subpt. 3. However, if actual cost increases exceed the known cost changes, no adjustment in the rate will be made. *Id.*

Surf and Sand's rates for the rate year commencing January 1, 1981 were thus calculated by adding the historical costs incurred by the facility in 1980 to the known cost changes projected by the facility for 1981, and dividing the total by the resident days during 1980. During 1980, Surf and Sand delivered 18,975 resident days of care. The Department allowed known cost changes for 1981 of $136,521. During the 1981 rate year, the number of resident days delivered were 17,094, or 1,881 less than 1980. Surf and Sand's revenue from all sources for 1981 was $922,631 and the total expenses recognized under Rule 49 were $962,134, a deficit of approximately $39,500. The expenditures of the known costs changes for 1981 were approximately $78,000 less than projected. When the Department audited Surf and Sand's 1981 cost report, it determined that as a result of the facility's failure to spend the total costs upon which its per diem was based, the facility would be required to make a payback of $55,659, to the Department. It is the method of determining the amount of the payback which is in dispute.

Prior to May 14, 1982, the date of the *White Bear Lake* decision, the Department used either the "gross dollar" or the "per diem" method to calculate the amount of the payback. The per diem method was used when a substantial increase or decrease in occupancy occurred between the historical year and the rate year. Following the Minnesota Supreme Court decision in *White Bear Lake*, the Department has used only the gross dollar method for determining whether the known cost changes were implemented and for calculating known cost change payback.

Under the gross dollar method, the known cost changes projected for the rate year are reduced by the amount of known cost changes actually incurred during the rate year. The difference is divided by the nursing home's actual resident days in the historical year. The resulting quotient is multiplied by the number of actual resident days experienced by the facility during the rate year. Under the gross dollar method, the amount of the payback was $55,659.

Under the per diem method, the payback amount is computed by dividing the known cost changes projected for the rate year by the actual resident days in the historical year, and dividing the known cost charges actually incurred in the rate year by the actual resident days in the rate year. The difference between these quotients is multiplied by the actual resident days in the rate year. The amount of payback using the per diem method would have been $26,584.

In addition, Minn.Stat. § 256B.03, subd. 2 (1982) provided that rates paid to certain facilities would not exceed by more than 10% the final rate allowed the facility the preceding year. Surf and Sand's accountant estimated the facility would lose $89,-000 through June 30, 1983 if the gross dollar method rather than the per diem method was used. The total effect would have been less if this limitation had not been enacted.

William Buchanan testified that when Surf and Sand's occupancy declined in 1981, he decreased the nursing staff by attrition. He testified that had he known the Department would apply the gross dollar method to calculate the payback for the 1981 rate year, he could have eliminated or reduced the amount of the payback by replacing employees who left, and by increasing the amount of nursing care provided to the residents. He could have spent an additional $80,000 without exceeding the maximum number of nursing hours per patient day allowed under Rule 49. Since the facility had a net loss in 1981, it would

have been necessary for Buchanan to take out a loan to pay for the additional nursing care. The administrative law judge found that each additional dollar spent on nursing salaries would have increased the deficit by at least the amount of the reduction in the payback.

The administrative law judge concluded that Minn.R. 9510.0030, subpt. 3.J. (formerly codified as 12 M.C.A.R. § 2.049B.1.c.(2)) required the Department to use the gross dollar method of computing the payback for the 1981 rate year, pursuant to *White Bear Lake* and *Broen Memorial Home v. Department of Human Services,* 364 N.W.2d 436 (Minn.Ct.App.1985), and that they must be applied retroactively to Surf and Sand. Consequently, the administrative law judge concluded that Surf and Sand owed the Department a $55,659 payback for the nonimplementation of known cost changes projected for 1981. The Department adopted the recommendation in its entirety, and Surf and Sand petitioned for a writ of certiorari to review the decision.

Surf and Sand also raises a discovery issue. It had requested an opportunity to depose several people who had worked in the Department at the time *White Bear Lake* was decided, and the Department denied the request. Several days prior to the hearing, Surf and Sand, in a telephone conference that was not recorded, moved the administrative law judge to allow the depositions. The purpose of the depositions was to inquire whether the Department employees thought the gross dollar method announced in *White Bear Lake* was equitable and why the Department had not promulgated a rule authorizing the use of the per diem method after *White Bear Lake* was decided. The Department again objected to allowing the depositions. The administrative law judge denied the motion on the grounds that no material or relevant information could be obtained from such a deposition.

The motion and decision were not put on the record until a statement of the proceedings was prepared for the appeal. Surf and Sand did not raise this issue in its exceptions to the administrative law judge's report, and review of the administrative law judge's decision was sought for the first time on appeal to this court.

## ISSUES

1. Did the Department err in applying the *White Bear Lake* decision retroactively, when it used the gross dollar method to calculate the payback which Surf and Sand Nursing Home owed the Department for unimplemented known cost changes?

2. Is the discovery issue reviewable and, if so, did the administrative law judge abuse his discretion when he denied Surf and Sand Nursing Home's deposition motion?

## ANALYSIS

### I.

The scope of judicial review of a contested case decision is governed by Minn.Stat. § 14.69 (1986); *see Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 826–27 (Minn. 1977). Surf and Sand argues that the decision of the Department should be reversed because it was affected by errors of law, unsupported by substantial evidence in view of the entire record as submitted, and arbitrary and capricious. Minn.Stat. § 14.69(d), (e), (f).

The first issue in this case is whether *White Bear Lake* should be applied retroactively. In *White Bear Lake,* the supreme court examined whether the Department's practice of computing cost change implementation on a per diem basis, rather than a gross dollar basis, was a permissible interpretation of Rule 49, or improper promulgation of a new rule. *Id.,* 319 N.W.2d at 7. The nursing home had an increase in patient occupancy days for the rate year and exceeded its projected cost increases, although the increase in fees from the additional patients covered the increases. The Department, as was its practice when a nursing home experienced a significant change in patient days between fiscal periods, reviewed the cost change implementation on a per diem basis. In cases of decreased occupancy, this

worked to the advantage of the nursing home. *id.* at 8.

The court concluded that Rule 49 did not specify that current occupancy rates were used in the calculation, that the recoupment provision applied when known cost changes did not occur, and that Rule 49 itself states that it was not intended to provide a system of reimbursement of actual cost through retroactive settlement. *Id.* at 9. It held that the per diem method was improper because it was a rule not promulgated in accordance with the Administrative Procedure Act. *Id.* at 7.

In *Broen,* the Department used the gross dollar method to calculate the payback. The nursing home contended that because it experienced a material decrease in occupancy, unlike *White Bear Lake,* the Department should use a per diem method for calculating the payback, rather than the gross dollar method. *Id.* at 439. This court noted that since *White Bear Lake,* the Department has used only the gross dollar method for calculating paybacks. *Broen,* 364 N.W.2d at 439. It agreed with the administrative law judge and Commissioner that *White Bear Lake* was controlling and that Minn.R. 9510.0030, subpt. 3.J. (1983) required the use of the gross dollar method:

> We understand Broen's frustration upon discovering the DHS no longer employed a per diem method in calculating paybacks when there were material changes in patient day occupancy between reporting periods. *White Bear Lake,* however, precludes the DHS from using the per diem method for calculating paybacks. It is irrelevant that in *White Bear Lake* the nursing home's occupancy rate increased rather than decreased. The court's holding is based upon a clear reading of the rule and upon the legal requirements of rulemaking which had not been met when DHS adopted the per diem method.

*Broen,* 364 N.W.2d at 439.

This court went on to state in response to an argument that the Department was required to use proper rulemaking procedures to end its practice of using the per diem method for nursing homes when occupancy has decreased:

> This argument assumes the supreme court invalidated only the use of the per diem method when the occupancy of a nursing home increases. Since the court held the practice constitutes an impermissible interpretation of the rule, it is invalid in all cases.

*Id.* The issue of retroactive application of *White Bear Lake* was not explicitly discussed.

 Surf and Sand argues that *White Bear Lake* should not be applied retroactively to it. The general rule is that decisions should be applied retroactively, absent special circumstances or specific pronouncements by the overruling court that its decision is to be applied prospectively only. *Hoff v. Kempton,* 317 N.W.2d 361, 363 (Minn.1982). In determining whether special circumstances exist, the supreme court adopted the three-part test in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). As the administrative law judge initially determined, however, it is not necessary to apply the *Chevron* factors here, because the decision was applied retroactively in *White Bear Lake* itself, and in *Broen. Welyczko v. U.S. Air, Inc.,* 733 F.2d 239, 241 (2d Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984).

Surf and Sand argues that a *Chevron* analysis should be used in any event to determine whether a retroactive application of a case is appropriate. *Edwards v. Teamsters Local Union No. 36,* 719 F.2d 1036, 1040–41 (9th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Perez v. Dana Corp., Parish Frame Division,* 718 F.2d 581, 584–85 (3d Cir.1983). Surf and Sand also argues that *Broen* has little precedential value because it did not address the issue of retroactivity. Finally, it asserts that in *White Bear Lake,* the Department acted unlawfully in operating under an unpromulgated rule. Here, Surf and Sand argues that it suffers the consequence of retroactive application and argues further that it did not act unlawfully. *See Atlantic Richfield Co. v. Federal*

*Energy Administration,* 463 F.Supp. 1079, 1086 (N.D.Cal.1979).

Even if the *Chevron* factors are applied, the same decision results. In *Hoff,* the three-part *Chevron* test was set out:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that "we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." * * * Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355, *quoted in Hoff,* 317 N.W.2d at 363 (citations omitted in *Hoff* ).

The administrative law judge determined that Surf and Sand was entitled to rely upon the Department's long standing interpretation of its rule, and that the *White Bear Lake* decision could not have been predicted with assurance sufficient to undermine the facility's reliance upon that interpretation. The parties agree with the administrative law judge and the Department that the first factor was met.

The next factor is whether retroactive application of *White Bear Lake* would further the purposes of Rule 49. Surf and Sand argues that the ruling of *White Bear Lake* was procedural, not substantive, and that the purpose of the *White Bear Lake* ruling would not be furthered by applying it retroactively to Surf and Sand. While *White Bear Lake* was based upon the conclusion that the per diem method was a rule which had not been promulgated in accordance with the Administrative Procedure Act, the court arrived at that holding

only after an analysis of the rule's provisions. *Id.,* 319 N.W.2d at 9.

There is no suggestion in the language that present occupancy rates are in any way involved in the calculation and we, therefore, find no ambiguity.

*Id.* at 9.

The overall purpose of Rule 49 is to define a system for the determination of per diem welfare rate for all nursing homes participating in the medical assistance program * * * that promotes efficiency and economy and treats all providers of nursing home care on a uniform basis.

Minn.R. 9510.0020. We concur with the Department that the purposes of Rule 49 are furthered when its provisions are accurately applied. The per diem method is contrary to the requirements of Rule 49 and using it to interpret Rule 49 is not proper. *White Bear Lake.*

The third *Chevron* factor requires a determination of whether retroactive application of *White Bear Lake* would produce substantial inequitable results. The administrative law judge concluded it would not, and that the facility was not in a cognizably worse position than it would have been had it known the gross dollar method would be used.

Surf and Sand argues that retroactive application produces an inequitable result. It asserts that had the facility known the gross dollar method would be used, it could have taken steps to minimize the long and short term effects, including not reducing the nursing staff. It also argues that it spent all the money which it received from the Department on patient care, and it is unfair that it is now being asked to return a portion of those funds.

Additional money Surf and Sand received during 1981 was based on its own cost over projections, which occurred largely because it experienced a decrease in occupancy in 1981. The rule puts the risk of declining occupancy on the nursing home. Further, Surf and Sand knew the rate payments were provisional and subject to adjustment at the end of the year. Buchanan testified he would have spent more money had he

known the gross dollar method would be used. The only way Surf and Sand could have avoided the additional payback arrived at by using the gross dollar method would have been for it to spend at least that same amount, increasing its deficit. As the administrative law judge stated:

> The loss of an opportunity to "pad" its expenses in order to maximize rates should not be considered as an inequity even though the resulting number of nursing hours per patient day would be within acceptable limitations.

We conclude that it was not inequitable to apply *White Bear Lake* retroactively to Surf and Sand.

Surf and Sand raised at oral argument the issue of whether use of the gross dollar method was unreasonable. This issue was not presented and decided below, and we decline to consider it on appeal. *Thayer v. American Financial Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn.1982).

## II.

■ Surf and Sand also challenges the administrative law judge's denial of its request to depose certain Department personnel. The Department argues that because the motion and order were not reduced to writing and were not submitted to the Commissioner for decision at any time, the Commissioner did not consider or decide the issue, and Surf and Sand is precluded from appealing it.

All motions and orders are to be in writing, unless made during a hearing, Minn.R. 1400.6600 (1987), and are to be part of the record. Minn.R. 1400.7400, subpt. 1. A party may move to compel discovery. Minn.R. 1400.6700, subpt. 2. Motions not certified to the agency are to be made to and decided by the judge, and considered by the agency in its consideration of the record as a whole, subsequent to the filing of the judge's report. Minn.R. 1400.7600. We disagree with Surf and Sand's argument that the administrative law judge's decision on procedural matters is final as to the agency.

In this case, because the motion and order were not put on the record until after the agency decision, the agency had no opportunity to review it as it ordinarily would have. *Id.* Generally, the burden is on the party seeking review to ensure the sufficiency of the record. *See Custom Farm Services, Inc. v. Collins*, 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976) (appellant has the burden of providing adequate record on appeal).

■ The Department also argued that failure by Surf and Sand to file exceptions to the administrative law judge's decision on the discovery matter precludes judicial review. It cites *Minnesota Administrative Procedure* § 7.9.3 at 146 (G. Beck, L. Bakken & T. Muck ed. 1987), which states:

> The initial method of obtaining review of a decision of the ALJ on an issue of discovery is to appeal to the agency by filing an exception to his or her final report on the ground that an erroneous discovery decision constituted a procedural defect substantially affecting the ultimate recommendation.

(Footnote omitted.) It notes that certain agencies have imposed more specific requirements with regard to filing exceptions. *Id.*

Generally, administrative remedies must be exhausted before judicial review is commenced, although there are exceptions to this doctrine. *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 51 (Minn.1979). It has been stated that in the absence of a rule or statute, it is not necessary that a party file formal exceptions to a proposed report of a hearing examiner in order to comply with the requirement of exhaustion of administrative remedies. 2 Am.Jur.2d *Administrative Law* § 608 (1962); *see Ace Delivery Service v. Boyd*, 100 So.2d 417, 419–20 (Fla.1958); *but see South Hollywood Hills Citizens Association v. King County*, 101 Wash.2d 68, 677 P.2d 114, 119 (1984) (rejecting reasoning of *Ace Delivery* and distinguishing regulatory scheme).

The statute here provides that no decision shall be made by the agency officials who are to render an opinion until the administrative law judge's report has been

made available to the parties for at least 10 days, and

> an opportunity has been afforded to each party adversely affected to file exceptions and present argument to a majority of the officials who are to render the decision.

Minn.Stat. § 14.61. This language does not make filing exceptions jurisdictional in this case.

Finally, even if the merits were considered, we would rule that the administrative law judge did not err in denying the motion. Minn.R. 1400.6700, subpt. 2 provides that

> the party seeking discovery shall have the burden of showing that the discovery is needed for the proper presentation of the party's case, is not for purposes of delay, and that the issues or amounts in controversy are significant enough to warrant the discovery.

The administrative law judge's decision that no material or relevant information could be obtained from the depositions sought by Surf and Sand is not an abuse of discretion. The substantial inequity prong of the *Chevron* test is directed towards the effect of the rule on Surf and Sand; depositions of Department personnel would not provide this information.

## DECISION

Affirmed.