STATE of Wisconsin, Plaintiff-Respondent,

v.

Jerry W. SAMPLE, Defendant-Appellant.†

Supreme Court

*No. 96–2184–CR. Oral argument November 6, 1997.—Decided February 10, 1998.*

(Also reported in 573 N.W.2d 187.)

†Motion for reconsideration denied April 15, 1998.

487

For the defendant-appellant there were briefs by *Gary Seeling* and *Seeling Law Offices*, Waukesha and oral argument by *Gary Seeling*.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri*, assistant attorney general with whom on the brief was *James E. Doyle*, assistant attorney general.

¶ 1. JANINE P. GESKE, J. The question certified to this court is whether Wis. Stat. § 939.31[1] codifies the "unilateral" or only the "bilateral" approach to the inchoate crime of conspiracy. The amended information alleged that the defendant, Jerry W. Sample, agreed or combined with another for the purpose of committing a crime, and that he knowingly and unlawfully possessed cocaine, a controlled substance, with intent to deliver to a prisoner within the precincts of a jail. The two people with whom Sample was alleged to have conspired were an undercover officer and a police informant. After a jury trial, Sample was convicted of possession with intent to deliver cocaine, distribution to a prisoner, and conspiracy, in violation of Wis. Stat. §§ 161.41(1m)(c)1, 161.465, and 939.31.

¶ 2. Sample asserts that Wis. Stat. § 939.31 criminalizes only bilateral conspiracy, that is, a conspiracy where two or more persons agree, with criminal intent, to commit a crime. The circuit court denied several motions made by Sample to dismiss the conspiracy charge and held that a person can enter into a conspiracy with an undercover agent and an informant to accomplish some common criminal objective. We conclude that a plain reading of Wis. Stat. § 939.31 embraces both unilateral and bilateral conspiracies, and therefore affirm the circuit court.

---

[1] Wis. Stat. § 939.31 (1993–94) CONSPIRACY

. . . [W]hoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may, if one or more of the parties to the conspiracy does an act to effect its object, be fined or imprisoned or both not to exceed the maximum provided for the completed crime. . . .

All other statutory references in this opinion will refer to the 1993–94 volume, unless otherwise indicated.

## I.  FACTS AND PROCEDURAL HISTORY

¶ 3.  The defendant, Jerry W. Sample, was a correctional officer at the Waukesha County Jail. In July 1993 an inmate offered Sample $50 to get a pack of "cigarettes" from his "grandmother" in Milwaukee, and to bring it to him in the jail. After further conversation, Sample agreed, went to an address the inmate had given him, picked up the package and the $50, and delivered the package to the inmate.

¶ 4.  Over the next several months, Sample brought similar packages to the inmate on approximately 15 occasions. At some point Sample understood that these packages actually contained marijuana or cocaine, and that the inmate was distributing these controlled substances to other inmates in the jail. Sample was typically paid $50 for picking up and delivering the packages. He was paid $100 when a package contained cocaine.

¶ 5.  At some point in the fall of 1993, the Waukesha County Sheriff's Department received information that a prisoner housed in the federal block of the jail was receiving controlled substances from a Sheriff's Department employee.[2] Members of the Sheriff's Department traveled to interview several federal prisoners formerly housed at the Waukesha jail. Those interviews led the investigators to focus on a particular federal prisoner then housed in the Waukesha County Jail—the inmate with whom Sample had been working.

---

[2] The Waukesha County Jail, at least at the time of these events in 1993, had a contract to serve as a federal holding center. As such, the jail housed federal prisoners whose cases were pending, or who, for example, were en route from a federal facility to hearings.

¶ 6. Before meeting with the inmate, Captain Lentz, the officer in charge of the investigation, met with the Assistant United States Attorney for the Eastern District to learn more about him. On December 2, 1993, Captain Lentz met with the inmate at the United States Attorney's office in Milwaukee, and promised the inmate that the State would not prosecute him for his involvement in distributing drugs in the Waukesha County Jail if he cooperated in the investigation. The inmate agreed to cooperate with authorities and identified Sample as the employee who was bringing in the controlled substances.[3]

¶ 7. On December 8, 1993, Mr. Bernard J. Tesmer, of the Waukesha County Jail, watched a video surveillance monitor and observed the inmate and correctional officer Sample having some contact in one of the jail cell pods. Tesmer made a note of his observation. Tesmer testified that the inmate and Sample exchanged some sort of small package or envelope, but Tesmer did not know the contents of the package. Tesmer immediately contacted the jail captain in charge of the investigation. Later that same day, arrangements were made for an undercover officer to meet with Sample outside a restaurant, so that the undercover officer could give Sample $200. Sample never went to the restaurant that day.

¶ 8. On the following day, December 9, 1993, Waukesha authorities conducted a controlled "reverse sting" operation in which the inmate asked Sample to get a package of cocaine from the inmate's girlfriend and to bring it to the jail. As he was instructed by the inmate, Sample met the girlfriend, who was actually

---

[3] Although he agreed to cooperate in the investigation, the inmate never directly admitted that he had distributed controlled substances to other Waukesha County Jail inmates.

an undercover detective, and received a package of cocaine from her. When the undercover detective signaled that the transaction had taken place, other officers immediately moved in to arrest Sample. As one of the officers identified himself and ordered Sample not to move, Sample tossed the package of cocaine on the ground beside him.

¶ 9. Sample admitted in a police interview later that day that he had been bringing marijuana and cocaine to the inmate for several months. Sample was charged with one count of conspiracy to possess a controlled substance with intent to deliver to an inmate during late November and early December 1993.[4]

¶ 10. Sample challenged the conspiracy charge in a motion to dismiss the information and renewed his argument several times before and during the trial, including a request for jury instructions encompassing the bilateral approach to conspiracy. Sample argued to the circuit court, citing *State v. (Thomas C.) Smith*, 189 Wis. 2d 496, 501, 525 N.W.2d 264 (1995), that a conspiracy must involve at least two people, with each member subject to the same penalty for the conspiracy, or that each person has a stake in the outcome. Sample argued that Wisconsin's conspiracy statute is bilateral and that he could not be convicted of the crime because the other members of the conspiracy never intended that a crime be committed.

¶ 11. Ruling on Sample's motion to dismiss, the circuit court held that an undercover agent can enter into a conspiracy with another person in a mutual understanding to accomplish a common criminal objective, even though the two parties have different

---

[4] Sample was charged with violating Wis. Stat. §§ 161.01 (4), 161.16(2)(b)1, 161.41(1m)(c)1, 161.465 and 939.31 (1993–94).

reasons in fact for doing so. The circuit court also rejected Sample's proposed jury instruction, ruling that a conspiracy could occur even if the stakes were different for each of the actors. The circuit court then instructed the jury using the standard instruction Wis JI—Criminal 570.[5]

---

[5] The circuit court gave the following instruction, based on pattern instruction Wis JI—Criminal 570:

The crime of conspiracy, as defined in Section 939.31 of the criminal code of Wisconsin is committed by one who, with intent that a crime be committed agrees or combines with another for the purpose of committing such crime, if one or more of the parties to the conspiracy does an act to affect it's [sic] object.

The defendant in this case is charged with having conspired to commit the crime of possession of cocaine with intent to deliver to a prisoner within the precincts of a jail.

Before you may find the defendant guilty, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present.

The first element requires that the defendant intended that the crime of possession of cocaine with intent to deliver to a prisoner within the precincts of a jail be committed.

The second element of the crime of conspiracy requires that the defendant was a member of a conspiracy to commit the crime of possession of cocaine with intent to deliver to a prisoner within the precincts of a jail.

A person is a member of a conspiracy if with intent that a crime be committed, the person agrees with or joins with another for the purpose of committing that crime. A conspiracy is a mutual understanding to accomplish some common criminal objective or to work together for a common criminal purpose. It is not necessary that the co-conspirators had any express or formal agreement or that they had a meeting or even that they all knew each other.

The third element of the crime of conspiracy requires that an act to effect the object of the conspiracy was performed by one or more of the co-conspirators, such an act must be more than mere planning and agreement. However, it need not by itself be an attempt to commit the crime or an unlawful act. If there was an act which was a step toward accomplishing the criminal objective, that is sufficient.

¶ 12. On November 22, 1995, the jury found Sample guilty of conspiracy to possess a controlled substance with intent to deliver to an inmate, and he was sentenced to eight years in prison. Sample appealed, and we accepted certification[6] from the court of appeals.[7] Sample now asks this court to vacate his conviction and the sentence imposed, claiming that no crime of a one-person conspiracy exists under Wisconsin law.[8]

> If you're satisfied beyond a reasonable doubt that the defendant intended that the crime of possession of cocaine with intent to deliver to a prisoner within the precincts of a jail be committed, that the defendant was a member of a conspiracy to commit the crime, and that an act toward the commission of that crime was performed by a member of the conspiracy, you should find the defendant guilty.
>
> If you're not so satisfied, you must find the defendant not guilty.

[6] The court of appeals requested certification pursuant to Wis. Stat. § (Rule) 809.61 (1995–96).

[7] The question of whether the Wisconsin legislature adopted a "unilateral" or "bilateral" approach to conspiracy was before the court once before. In 1995 this court accepted certification in *State v. (Edgar) Smith*, No. 94–1725-CR. After hearing oral arguments, the court determined that the unilateral versus bilateral issue was never raised in the circuit court, and then vacated the order accepting the certification.

[8] In its memorandum requesting certification, the court of appeals suggested that this case presents an opportunity to give guidance to the Criminal Jury Instructions Committee in drafting pattern instructions that correctly state the law of conspiracy. *See* Wis. JI—Criminal 570, 401, 410. The committee uses the same definition of conspiracy in its pattern instruction for the charge of party to a crime under Wis. Stat. § 939.05, and the charge of conspiracy under Wis. Stat. § 939.31. The former statute codifies vicarious liability for a substantive crime under the conspiracy theory, and the latter codifies the inchoate crime

## II. STANDARD OF REVIEW

¶ 13. The issue presented is one of statutory interpretation, a question of law which this court reviews de novo. *See State v. Sostre*, 198 Wis. 2d 409, 414, 542 N.W.2d 774 (1996). We have often expressed the rules by which we interpret statutes:

> The purpose of statutory interpretation is to discern the intent of the legislature. To do so, we first consider the language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, we apply that intent to the case at hand and do not look beyond the statutory language to ascertain its meaning.

*State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997) (citations omitted). By focusing on the intent of the legislature rather than our own policy views, we preserve principles of separation of powers.

¶ 14. Legislative intent is not always readily discernible, however. Our rules of interpretation also recognize that

> [a] statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. However, a statute is not rendered ambiguous merely because the parties disagree as to its meaning. If a statute is ambiguous we look to the scope, history, context, subject matter, and object of the statute in order to ascertain legislative intent. However, resort to

---

of conspiracy. We conclude that a challenge to either the jury instructions for the inchoate crime of conspiracy, Wis. Stat. § 939.31, or to the instructions for Wis. Stat. § 939.05, is not presented in this case and decline to specifically address it.

legislative history is not appropriate in the absence of a finding of ambiguity.

*Setagord*, 211 Wis. 2d at 406 (citations omitted).

¶ 15.   The parties in this case disagree as to the meaning of Wis. Stat. § 939.31.[9] Both Mr. Sample and the State contend that a plain reading of Wis. Stat. § 939.31 supports their interpretation of the statute. Under Sample's reading, the statute applies only to bilateral conspiracies. The State reads the statute to encompass both unilateral and bilateral conspiracies.[10] The circuit court concluded that the plain meaning of the statute permitted prosecution for a unilateral conspiracy.

¶ 16.   Commentators have described the differences between unilateral and bilateral conspiracies. "Under a unilateral formulation, the crime of conspiracy is committed when a person agrees to proceed in a prohibited manner." Note, *Conspiracy: Statutory Reform Since the Model Penal Code*, 75 Colum. L. Rev. 1122, 1136 (1975) [hereinafter *Statutory Reform*]. The unilateral approach assesses the subjective, individual behavior of a defendant in determining guilt. *See* Dierdre A. Burgman, *Unilateral Conspiracy: Three Critical Perspectives*, 29 DePaul L. Rev. 75, 76 (1979–80). Under the unilateral approach, criminal conspiracy will lie even where one of two alleged "co-conspirators" is, unknown to the defendant, an undercover police agent or a police informant who

---

[9] Wis. Stat. § 939.31 (1993–94) was revised by 1995 Act 448, § 447, effective July 9, 1996, to reflect a renumbering of a referenced statute. The revision did not materially change the statute.

[10] The State conceded in its brief to this court that if the statute is interpreted to include only bilateral conspiracies, then Sample could not be found guilty under the statute.

merely feigns participation in the conspiracy. "[T]he immateriality of co-conspirators' legal status to defendant's criminal liability is implicit in the. . .unilateral approach." *Statutory Reform*, at 1138. "[U]nder a bilateral formulation, the crime of conspiracy is committed when two or more persons agree to proceed in [a prohibited] manner." *Id.* at 1136.

## III. PLAIN LANGUAGE

¶ 17. Sample makes several arguments in urging us to conclude that Wis. Stat. § 939.31 applies only to bilateral conspiracies. We will first address his argument that the plain language of the statute evinces a legislative intent to cover only bilateral conspiracies. Sample contends that the undefined term "whoever" in the statutory phrase "[W]hoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may," necessarily refers to "persons" in the plural. Sample also contends that the undefined verbs "agrees" and "combines" in the statute imply plurality. He relies on *Kenosha Unified School Dist. No. 1 v. Kenosha Ed. Ass'n*, 70 Wis. 2d 325, 332, 234 N.W.2d 311 (1975) and *State v. Richard Knutson, Inc.*, 196 Wis. 2d 86, 106–07, 537 N.W.2d 420 (Ct. App. 1995), for these grammatical conclusions.

¶ 18. The State counters with a dictionary definition to assert that "whoever" is an indefinite pronoun which may be either singular, plural, or both. *See The American Heritage Dictionary*, Usage Note to "everyone" at 470 (2d college ed. 1982); *see also Webster's Third New International Dictionary* at 2611 (1986 unabridged). Next, the State points out that the verbs "agrees" and "combines", as found in the conspiracy statute, are in the singular inflection.

Further, the State asserts that the dictionary definitions do not require that the "agreement" or "combination" must actually exist. Instead, according to the State, the "agreement" or "combination" in the context of a conspiracy statute may be real, apparent, or merely imagined, and still be compatible with the ordinary definition of the terms.

¶ 19. The authorities offered by Sample to confine "whoever" to the plural form are not persuasive. Neither *Kenosha Unified* nor *Richard Knutson* addresses whether "whoever" is solely singular or solely plural. The court in *Kenosha* interpreted a statute assessing penalties for striking municipal employees.[11] *See* 70 Wis. 2d at 330–332. The school district argued that the penalty statute applied to the teachers' union as a whole, as well as to individual striking teachers. The point of contention was whether "whoever" applied only to individual human beings, or whether it also applied to collective groups of individuals, such as unincorporated associations. This court concluded that the plain language of the statute evinced a legislative intent only to limit the potential penalty imposed upon individual strikers, based in part on the statutory provision that any fine imposed could be deducted from the striker's salary.

---

[11] That statute read in pertinent part:

**Wis. Stat. § 111.70(7) PENALTY FOR STRIKER.** Whoever violates sub. (4)(l) after an injunction against such a strike has been issued shall be fined $10. After the injunction has been issued, any employee who is absent from work because of purported illness shall be presumed to be on strike unless the illness is verified. . .The court shall order that any fine imposed under this subsection be paid by means of a salary deduction at a rate to be determined by the court.

¶ 20. The court of appeals in *Richard Knutson*[12] concluded that the term "whoever" as used in a homicide statute was ambiguous as to whether it referred only to human beings, or to both natural and artificial persons.[13] *See* 196 Wis. 2d at 96. The *Richard Knutson* court was not asked to determine the number of human beings included in the term "whoever" as used in Wis. Stat. § 940.10.

■

¶ 21. We agree with the State that the common and ordinary meaning of the word "whoever" can encompass both a single individual or more than one person. For purposes of statutory interpretation or construction, the common and approved usage of words may be established by consulting dictionary definitions. *See* Wis. Stat. § 990.010(1); *see also Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995). This is not to say that courts may resort to a dictionary only when construing ambiguous statutes. *See Figgs v. City of Milwaukee*, 121 Wis. 2d 44, 51, 357 N.W.2d 548 (1984) and *State ex rel. Smith v. City of Oak Creek*, 139 Wis. 2d 788, 798 n.6, 407 N.W.2d 901 (1987) (concluding that the necessity of looking to a

---

[12] In *State v. Richard Knutson, Inc.*, 191 Wis. 2d 395, 528 N.W.2d 430 (1995), this court vacated its decision to certify the question presented by the court of appeals, because, after oral argument, the court was equally divided on whether to affirm or reverse the judgment of the circuit court. 191 Wis. 2d at 396. This court then remanded the cause back to the court of appeals, whereupon that court issued its decision, published at 196 Wis. 2d 86, 537 N.W.2d 420 (Ct. App. 1995).

[13] Wis. Stat. § 940.10 provided in pertinent part:

"[W]hoever causes the death of another human being by the negligent operation or handling of a vehicle is guilty of a Class E felony."

standard dictionary to ascertain the usual meaning of words does not render a word used in a statute ambiguous).

¶ 22. One dictionary frequently relied upon by courts defines "whoever" as a pronoun with the following meaning: "1. Whatever person or persons: *Whoever comes will be welcomed.* 2. Who: *Whoever could have dreamed of such a thing?" The American Heritage Dictionary of the English Language* at 2038 (3d ed. 1992). We conclude that the term "whoever" can be read as singular or plural. Second, we do not read the terms "agrees" or "combines" strictly to require application to a unilateral conspiracy. Instead, we simply conclude that the singular form of "agrees" and "combines" when used with the indefinite pronoun "whoever" represents subject-verb agreement within the language of the statute.

¶ 23. We disagree with the State's third grammatical argument that an "agreement" or "combination" in the context of a conspiracy charge may be merely apparent or imagined. The State asserts that the dictionary definitions for those terms do not require actual existence, and likewise the statute may encompass "imagined" agreements. This third argument may suffer from a poor choice of words more than anything else. We understand the State's position to be that feigned agreement by another member of the conspiracy is sufficient under the unilateral approach. We agree. In the context of an agreement between a defendant charged under Wis. Stat. § 939.31 and another person, as long as the parties agree or combine by their words or actions, it is not necessary that the other person intend agreement. His or her "agreement" may be feigned.

¶ 24. The State also argues that Wis. Stat. § 939.31 plainly encompasses unilateral conspiracies because the statutory phrase, "with intent that a crime be committed" modifies only the pronoun "whoever." The relevant portion of the statute reads: "[W]hoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may. . . ." Because of the placement of that modifying phrase - following the pronoun "whoever," but preceding "agrees or combines" - the State asserts that the legislature intended to embrace the unilateral conspiracy theory. The statute therefore, according to the State, only requires intent on the part of the individual charged, the "whoever," and not necessarily intent by any of the persons who agree or combine with the defendant for the purpose of committing a crime, or who seemingly do so.

¶ 25. A plain reading of Wis. Stat. § 939.31's codification of the inchoate[14] crime of conspiracy evinces a legislative purpose to assess the subjective behavior of the individual defendant. This purpose is discerned from both the use of the singular form of pronouns and verbs, as well as the absence, within the statute, of a requirement of criminal intent on the part of anyone other than the person charged. To read the statute as only applying to bilateral conspiracies would mean that a person is liable for conspiracy based on the state of mind of another. Such a reading would be contrary to the singular form of the statutory terms, and the grammatical construction of the statute itself. The district attorney succinctly summed up the

[14] Blacks Law Dictionary 761 (6th ed. 1990) defines "inchoate":

Imperfect; partial; unfinished; begun, but not completed; as a contract not executed by all the parties.

application of the statute in the case of a unilateral conspiracy:

> [The inmate], even if he is acting as an agent of the State, can still be a part of the conspiracy if he has an agreement with [the inmate] (sic) to bring the drugs - - with Mr. Sample to bring the drugs into the jail. Mr. Sample is stuck with who he chose to deal with. He chose [the inmate], who turned informant on him and turned essentially state's evidence. That's still part of the conspiracy from the time frame that's charged when this defendant admitted that he was delivering cocaine into the jail between November and December of 1993. Just because the person who he's conspiring with to achieve an objective happens to turn state's evidence on him and he doesn't know about it doesn't mean the conspiracy no longer exists.

To read the statute as limited to bilateral conspiracies would preclude the State from prosecuting anyone who entered into an agreement to commit a crime, where that second person is cooperating with law enforcement authorities, or otherwise lacks criminal intent.[15] Instead, we read the plain language of the statute to focus on the criminal intent of a single defendant. We conclude that the plain language of Wis. Stat. § 939.31 embraces both unilateral conspiracies and bilateral conspiracies.

¶ 26. Defendant Sample next argues that interpreting the statute to include the unilateral

---

[15] We recognize, however, that some jurisdictions have codified only a bilateral formulation of conspiracy. Those jurisdictions include, for example, Cal. Penal Code § 182 (West. 1998); Iowa Code Ann. § 706.1 (West. 1997); Mich. Comp. Laws Ann. § 750.157a (West. 1997); Tenn. Code Ann. § 39–12–103 (West 1997); and 13 Vt. Stat. Ann. tit. § 1404 (West. 1997).

conspiracy approach is inconsistent with prior case law. We disagree. The cases Sample cites are either factually distinct or concern another statute.

¶ 27. Sample bases his interpretation of Wis. Stat. § 939.31 in part on *State v. (Thomas C.) Smith*, 189 Wis. 2d 496, 525 N.W.2d 264 (1995). He cites *Smith* for the proposition that a conspiracy must involve at least two people, with each member subject to the same penalty for the conspiracy, or that each person has a stake in the outcome. The true rationale of *Smith*, however, was that members of the conspiracy must be in agreement to commit the same crime.[16] In that case, the defendant seller was convicted of conspiracy to deliver a controlled substance. However, the only evidence presented by the state was that the seller purported to have in his possession and agreed to sell a small amount of controlled substance to the buyer. The amount was consistent with personal use, and there was no claim that the buyer thereafter intended to sell, deliver or give the controlled substance to a third party. *See* 189 Wis. 2d at 498. Based on the evidence, we determined that at most the buyer could have been guilty of a misdemeanor of possession, a different crime from that with which defendant seller was charged. We therefore concluded that there was no factual basis to sustain a theory of conspiracy to deliver a controlled substance, and allowed the defendant to withdraw his guilty plea. *See id.* at 504. The evidence in this case is different, and is not consistent with mere personal use of a controlled substance. Here, the evidence shows

---

[16] Indeed, a difference in actual available penalties cannot dictate whether persons are subject to liability for conspiracy under Wis. Stat. § 939.31. For example, one member of the conspiracy could have already had a criminal history and be subject to a penalty enhancer for being a repeater.

that Sample conspired to deliver drugs to someone engaged in delivering drugs to other persons in a jail.

¶ 28. The "stake in the outcome" language from *Smith* derives from cases directly or indirectly relying on *State v. Nutley*, 24 Wis. 2d 527, 129 N.W.2d 155 (1964), *cert. denied*, 380 U.S. 918 (1965), *overruled on other grounds, State v. Stevens*, 26 Wis. 2d 451, 463, 132 N.W.2d 502 (1965). *Nutley* concluded that "each member of the conspiracy must individually consciously intend the realization of the particular criminal objective." The *Nutley* court then went on to say that "[e]ach must have an individual 'stake in the venture.'" 24 Wis. 2d at 556. *Nutley* gave that explanation of the party to a crime statute by relying upon language from cases written before the conspiracy statute was revised.

¶ 29. Although Sample argues that the *Nutley* statement regarding the individual stake in the venture constitutes a separate element necessary to establish liability under Wis. Stat. § 939.31, we conclude otherwise. *Nutley* concerned a different statute, Wis. Stat. § 939.05. Further, the statement in *Nutley* did not lay down a new element for proof of that crime, but instead offered a narrative description of the type of proof that could be used to prove the statutory elements for party to a crime liability. As such, *Nutley* and its progeny do not compel us to read into the plain language of the inchoate crime of conspiracy statute either an additional element of intent on the part of the other members of the conspiracy, or alternately, an element of a "stake in the venture," or "stake in the outcome."[17] *Nutley* involved the charge of party to a

---

[17] We find support for our distinction of *Nutley* in other cases. *See, e.g., State v. Hecht*, 116 Wis. 2d 605, 627, 342 N.W.2d 721 (1984). A number of Wisconsin decisions have held that "a

crime under Wis. Stat. § 939.05. That statute forms a separate basis for criminal liability, distinct from that for the inchoate crime of conspiracy. *Nutley* described the operation of the conspirators' intent in party to a crime liability: the fact of agreement imposes liability for the substantive offense on all conspirators when the crime is consummated by a single perpetrator. *See* 24 Wis. 2d at 555. In contrast, under the inchoate crime of conspiracy, by definition no substantive crime is ever needed. Wisconsin Stat. § 939.31 focuses on the subjective behavior of the individual defendant.[18]

stake in the venture" is not an element of the crime of party to a crime codified in Wis. Stat. § 939.05. *See, e.g., Krueger v. State*, 84 Wis. 2d 272, 286, 267 N.W.2d 602 (1978) *cert. denied*, 439 U.S. 874; *State v. Manson*, 76 Wis. 2d 482, 486, 251 N.W.2d 788 (1977); *State v. Asfoor*, 75 Wis. 2d 411, 427, 249 N.W.2d 529 (1977).

One case relied upon by *Nutley* was *Direct Sales Co. v. United States*, 319 U.S. 703 (1943), an inchoate conspiracy case. However, the Court in *Direct Sales* considered proof of a stake in the venture as merely relevant to proof of the transition from knowledge to intent to participate in the commission of a crime. *Direct Sales*, 319 U.S. at 704, 713. *Direct Sales* did not elevate proof of a stake in the venture to an element of the inchoate crime of conspiracy. Nor does the language of Wis. Stat. § 939.31 include a "stake in the venture" as an element. We will not judicially insert it.

[18] Recently, the court of appeals in *State v. West*, 214 Wis. 2d 467, 475, 571 N.W.2d 196 (Ct. App. 1997), stated that the elements of a conspiracy under Wis. Stat. § 939.31 are: "(1) an agreement between the defendant and at least one other person to commit a crime; (2) intent on the part of the conspirators to commit the crime; and (3) an act performed by one of the conspirators in furtherance of the conspiracy," citing *Hawpetoss v. State*, 52 Wis. 2d 71, 80, 187 N.W.2d 823 (1971). The issue in *West* was only whether there was any evidence that another

## IV.   OTHER CLAIMS

¶ 30.   Sample also briefly argues that the reverse sting in this case violated his right to protection from ex post facto prosecution and his rights to due process under the law. Because we read Wis. Stat. § 939.31, as presently drafted, to have always encompassed unilateral conspiracy as a criminal act, this is not a retrospective interpretation and Sample's claims of ex post facto prosecution and deprivation of a due process right to advance warning of prohibited conduct are not supported.

¶ 31.   In addition, Sample argues that a unilateral reading of the statute allows law enforcement officers to create crimes. He also claims that he is the victim of a governmental abuse of power, in the form of the reverse sting operation which resulted in his arrest. Sample, while not asserting the affirmative defense of entrapment, states that the investigating officers "created a conspiracy-like crime

---

person had agreed with West to commit a crime. The *West* court did not reach the question of whether the other person possessed criminal intent. The *Hawpetoss* court, upon which the *West* court relied, in turn relied on *Nutley*, 24 Wis. 2d 527. Two other court of appeals § 939.31 conspiracy cases recite the need for intent on the part of more than one conspirator, based on the language in *Nutley* but without relying on that requirement for their holdings. *See State v. Copening*, 103 Wis. 2d 564, 579, 309 N.W.2d 850 (Ct. App. 1981) (holding that probable cause existed to charge the defendant with conspiracy) and *State v. Blalock*, 150 Wis. 2d 688, 704, 422 N.W.2d 514 (Ct. App. 1989) (holding that co-conspirator's statements were admissible because his acts were in furtherance of the conspiracy). We do not read either of these decisions as inconsistent with our conclusion that Wis. Stat. § 939.31 encompasses the unilateral approach.

to ensnare Mr. Sample." Petitioner's brief at 25. We disagree with both assertions.

¶ 32.   The government conduct in this case was to infiltrate an ongoing scheme of bringing drugs into the precincts of a jail. The complaint against Mr. Sample was not based merely on the events of December 9, 1993. The government may have provided opportunity for a particular delivery, but the government did not create the crime here. The government did not instigate the ongoing scheme of bringing drugs into the jail. *See State v. Steadman*, 152 Wis. 2d 293, 302, 448 N.W.2d 267 (Ct. App. 1989). Sample's due process rights were not violated. Further, the fact that the investigating officers enlisted the aid of a jail inmate and utilized an undercover officer is not the type of police behavior that is "shocking to a universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973) (holding that where law enforcement agents provided the defendant with ingredients for illegal manufacture of drugs, the agents' participation was not unfair or shocking to any sense of justice because it related to criminal activity already in progress).

¶ 33.   Because the plain language of Wis. Stat. § 939.31 evinces a legislative intent to criminalize both unilateral and bilateral conspiracies, we affirm the judgment of the circuit court.

*By the Court.*—The decision of the circuit court is affirmed.

¶ 34.   SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I join the court in its mandate. I write separately to express my disagreement with the majority opinion's reliance on the plain meaning canon to interpret Wis. Stat. § 939.31.

507

¶ 35. In determining the legislative intent, the majority opinion looks solely to the text of the statute. Discussing whether the word "whoever" is singular or plural, the majority bases its decision that the statute embraces the unilateral approach to conspiracy on the statute's use of pronouns and verb conjugations. Pronouns are a natural source of uncertainty in statutory interpretation because they have little inherent meaning and do not contain enough information on their own to name the person(s) to whom they are intended to refer. *See* Lawrence M. Solan, *The Language of Judges* 38, 121 (1993).

¶ 36. In using dictionary meanings and rules of grammar, the majority dons thick grammarian spectacles and fails to see other available evidence bearing on the meaning of the statute.[1] In this case the 1950 and 1953 Wisconsin Legislative Council reports provide a rich discussion on the revisions to the conspiracy statute, a discussion which is omitted by the majority opinion.

¶ 37. The majority's approach has been criticized by scholars and courts, including the United States Supreme Court in *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1 (1976). The *Train* Court refused to rely exclusively on the plain language of a statute: "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clean the words may appear on 'superficial examination.'" *Id.* at 10 (quoting *United States v.*

---

[1] *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 113 (1991) (Stevens, J., dissenting) (criticizing the majority opinion for putting on "its thick grammarian's spectacles and ignor[ing] the available evidence of congressional purpose and the teaching of prior cases construing a statute").

*American Trucking Ass'ns*, 310 U.S. 534, 543–44 (1940)).

¶ 38. Furthermore, in resolving the meaning of the statute, the court should consider the public policy reasons that support either a unilateral or a bilateral approach to conspiracy. Justification for the unilateral approach is explained in the Model Penal Code as follows: "Under the unilateral approach of the [Model Penal] Code, the culpable party's guilt would not be affected by the fact that the other party's agreement was feigned. . . .[H]is culpability is not decreased by the other's secret intention."[2]

¶ 39. Public policy also supports the bilateral approach to conspiracy. One court explained the rationale for the bilateral rule as follows:

> The rationale behind making conspiracy a crime also supports [the bilateral] rule. Criminal conspiracy is an offense separate from the actual criminal act because of the perception "that collective action toward an antisocial end involves a greater risk to society than individual action toward the same end." In part, this view is based on the perception that group activity increases the likelihood of success of the criminal act and of future criminal activity by members of the group, and is difficult for law enforcement officers to detect. . . . Such dangers, however, are nonexistent when a person "conspires" only with a government agent.

*United States v. Escobar de Bright*, 742 F.2d 1196, 1199 (9th Cir. 1984) (emphasis added) (citations omitted).

---

[2] Model Penal Code and Commentaries, Part I § 5.03, at 400 (1985).

¶ 40.   I would interpret Wis. Stat. § 939.31 by considering the statutory language, the legislative history, the prior cases, the legislative purpose and the conspiracy statute in the context of the criminal code. Several scholars have proposed methods of statutory interpretation that take into account the text and various extrinsic aids.[3] By using this approach to statutory interpretation, judges can acknowledge and deal with interpretive problems that arise from the inherent ambiguity of language as well as the limits of our linguistic capabilities. *See* Solan at 117.

¶ 41.   For the foregoing reasons, I join the court's mandate and write separately.

¶ 42.   I am authorized to state that Justice William A. Bablitch joins this concurrence.

---

[3] *See, e.g.*, Ronald Dworkin, *Law's Empire* (1986) (focusing on the entire history of a statute and how it fits into the current legislative scheme); Richard A. Posner, *The Problems of Jurisprudence* (1990) (placing weight on the pre-enactment history of a statute); William N. Eskridge, Jr. & Philip P. Frickey, *Statutory Interpretation as Practical Reasoning*, 42 Stan. L. Rev. 321 (1990) (urging consideration of a broad range of textual, historical and evolutive evidence in interpreting statutes).