ANN WALSH BRADLEY, J. (dissenting).
¶ 38 Although the administrative law judge initially found that granting the Myers' permit request would likely not have detrimental effects, he also observed "it is not always possible to predict the impact of a particular structure in such a dynamic system."
¶ 39 The ALJ's admonition proved prescient. A decade after the Myers completed construction of their pier, the DNR received complaints from neighbors that the Myers' pier was not operating as intended. Specifically, the neighbors asserted that the pier was exacerbating shoreline erosion and causing "loss of riparian property." Majority op., ¶ 9.
¶ 40 To remedy the now-apparent defects in the pier, the DNR issued a permit amendment requiring that the Myers modify their pier in one of two ways. Id., ¶12. The Myers declined to pursue either modification option presented by the DNR and instead have pursued judicial review of the DNR's action.
¶ 41 Upon review, the majority concludes that the DNR lacks the statutory authority to amend the permit. Id., ¶37; see Wis. Stat. §§ 30.12(3m)(d)2., 30.2095. It reaches this erroneous conclusion by writing words into the statutes, failing to follow its own analytical construct, and arriving at an unreasonable result that could leave the DNR toothless to address *196 some piers that violate the public interest. In my view, the pier-permitting statutes necessarily imply a grant of power to the DNR to amend permits. Accordingly, I respectfully dissent. *57 I
A
¶ 42 The majority's first error lies in reading words into the pier-permitting statutes that simply are not there.
¶ 43 Pursuant to Wis. Stat. § 30.12(1), all structures that are "placed" upon the bed of any navigable water require a permit. In the majority's view, "placement" "refers to setting a pier in the navigable waters, not the ongoing use of a pier." Majority op., ¶ 33. Accordingly, in the majority's estimation, a pier permit is "akin to a building permit," and is not required for the ongoing maintenance of a pier. Id., ¶28.
¶ 44 Such a distinction is salient because if the permit is for building only, then the permit conditions would not govern the ongoing maintenance of the pier. Conversely, if the permit is required for maintenance of a pier, then the obligations it creates do not end when construction is complete.
¶ 45 As a threshold to its analysis, the majority correctly sets forth the principles that govern statutory interpretation. See majority op., ¶ 18. Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not further the inquiry. Id. However, we must interpret statutes reasonably, to avoid absurd or unreasonable results. Id., ¶ 46.
*197 ¶ 46 With repeated assurances to the reader that it is embracing a plain meaning interpretation, the majority warns of the nemesis of plain meaning, i.e. writing words into the statute. Majority op., ¶ 24. And it advises the reader that we will refrain from doing so here. Id. Nevertheless, after such proclamations and protestations, the majority fundamentally alters the statute by writing into it an outcome-determinative word not written by the legislature. Although it pays lip service to a plain meaning interpretation, the majority fails to follow it.
¶ 47 Nowhere in the statutes on which the majority relies does the legislature delineate that a pier permit is a "construction" or "building" permit. This stands in marked contrast to the numerous statutes where the legislature has specified that a permit is a "construction" permit or "building" permit. See, e.g., Wis. Stat. § 31.05 (specifying that a permit is to "construct, operate and maintain a dam"); § 66.1036 (referring to the requirement that a "building permit" be the provided to county clerk); § 101.654(1)(a) (setting forth requirements for the issuance of a "building permit"); § 145.195 (referring to a "permit for construction" of any structure); § 285.60(1)(a) (referencing a "construction permit" for construction, reconstruction, replacement, or modification of a stationary air pollution source). When the legislature wants a permit to be a construction or building permit, it knows how to indicate as much.
¶ 48 Additionally, a standard principle of statutory interpretation requires that, except for technical or specially defined words, we give words their common, ordinary, and accepted meaning. Kalal, 271 Wis. 2d 633, ¶ 45, 681 N.W.2d 110. Yet, contrary to this principle, the majority asserts that the word "building" is essentially *198 a substitute for the word "placement." In the majority's view, "placement" cannot be ongoing. Such an assertion lacks citation and support in either the statute or the dictionary.[1] *58 ¶ 49 The Merriam Webster dictionary offers two sentences as examples for the use of the word "placement" indicating that "placement" does not end when an object is initially installed. "Placement," Merriam Webster Online Dictionary (2018), https://www.merriam-webster.com/dictionary/placement. Neither supports the majority's assertion.[2] Another commonly utilized dictionary includes in the definition of "placement," "[t]he state of being placed or arranged." The American Heritage Dictionary of the English Language 1382 (5th ed. 2011). There is no indication that this "state of being" is not ongoing.
¶ 50 As set forth in chapter 30, the plain language of the statutory scheme leads me to the conclusion that a permit is required to maintain a pier, not only to construct one. For example, the plain language of Wis. Stat. § 30.12(3m)(c) states that the DNR "shall issue an individual permit to a riparian owner for a structure" if the statutory requirements are met (emphasis added). The statute does not say that a permit shall be issued for the construction or building of a structure only. By reading the word "building" into the statute, the majority violates our established framework of statutory interpretation.
*199 ¶ 51 The upshot of my analysis is that the Myers' permit did not "expire" when construction on their pier was finished. Rather, the statutes set forth a continuing obligation to meet the requirements of the permit.
B
¶ 52 The majority's second error lies in its failure to follow its own analytical construct.
¶ 53 It correctly observes that "[a]n administrative agency has only those powers expressly conferred or necessarily implied by the statutory provisions under which it operates." Majority op., ¶ 21 (emphasis added) (citing Kimberly-Clark Corp. v. Public Serv. Comm'n of Wis., 110 Wis. 2d 455, 461-62, 329 N.W.2d 143 (1983) ). However, the majority's analysis suffers from a singular focus on powers "expressly conferred" by chapter 30 while neglecting to analyze those "necessarily implied."
¶ 54 A permit for the placement of a pier shall not issue if the pier materially obstructs navigation, is detrimental to the public interest, or materially reduces the flood flow capacity of a stream. Wis. Stat. § 30.12(3m)(c). In the majority's view, these three requirements need only apply at the time a pier is constructed, and "[t]here is no support in the plain language of Wis. Stat. ch. 30 for the DNR's claim that a pier permit carries with it an ongoing requirement to satisfy" them. Majority op., ¶ 24.
¶ 55 Essentially, the majority determines that the DNR has the power to issue a permit that is akin to a building permit, but not a permit for the maintaining of a pier. It bases its conclusion on the language *200 of the statute, but neglects to even consider that such a power is "necessarily implied" in the statutory scheme. In my view, it is.
¶ 56 Wisconsin Stat. § 30.12(3m)(c) clearly provides that a permit shall issue if the three enumerated criteria are met. As a corollary, if any of the criteria are not met, a permit shall not issue.
¶ 57 The question raised in this case is what happens when a pier meets the criteria *59 of Wis. Stat. § 30.12(3m)(c) when it is initially installed, but at some point conditions change and the pier no longer meets the statutory requirements. The statute dictates that if the requirements are not met, then a permit shall not issue. This means that the non-compliant condition must be corrected.
¶ 58 In order to bring the pier into compliance with the statute, the permit must be amended, and the statute "necessarily implies" that the DNR has this power. If the DNR did not have this power, the result would be a host of piers that violate the requirements of Wis. Stat. § 30.12(3m)(c), and the DNR possibly left with no means to address them. See infra, ¶¶59-66. As I discuss next, this is an unreasonable result that the legislature could not have intended.
C
¶ 59 The majority's third error lies in reaching an unreasonable result.
¶ 60 In denying the DNR the ability to amend the Myers' permit, the majority allows for the very thing the legislature has explicitly prohibited in Wis. Stat. § 30.12(3m)(c), i.e. it allows a pier to remain even if it obstructs navigation, is a detriment to the public interest, or reduces flood flow capacity. Further, the *201 majority's interpretation may deprive the DNR of any remedy at all in similar situations.
¶ 61 The majority's result is unreasonable because it allows for a pier to remain in a state of disrepair and impairment of the public interest. Wisconsin Stat. § 30.12(3m)(c)2. is clear in its mandate that a permit shall not issue if a structure will be detrimental to the public interest. Yet, the majority allows for this very thing-as long as a pier does not begin to become detrimental to the public interest until after it is constructed, the permit for that pier can never be amended.
¶ 62 It is also unreasonable to potentially leave the DNR toothless in the face of a pier that obstructs navigation, is detrimental to the public interest, or will reduce the flood flow capacity of a stream. If the DNR cannot modify the permit to remedy a detrimental condition in a pier, its remaining option (absent informal resolution) is to bring an enforcement action. See Wis. Stat. § 30.03(4)(a) (authorizing DNR to bring an enforcement action).[3]
¶ 63 However, in some situations a pier may be exempt from enforcement. See Wis. Stat. § 30.12(1k)(cm). In such a situation, the majority would leave the DNR powerless to act to remedy a defect that is detrimental to the public interest or the riparian rights of surrounding landowners. I view this result as unreasonable.
¶ 64 Although the Myers' pier was not contrary to the public interest when it was built, it is perfectly plausible that conditions may change. Here it is alleged *202 that the pier has become contrary to the public interest or interferes with the rights of other riparian owners.
¶ 65 Indeed, the DNR determined that "the existing 12-foot flow-through opening is not functioning as intended consistently enough to provide sufficient movement of water and sediment on a regular basis to prevent the interruption of the natural littoral processes." The impact is that "[t]his disruption, in turn, is exacerbating the formation of land on the bed of Lake Superior and starving adjacent 'down-drift' properties of sediment."
*60 ¶ 66 If the DNR cannot modify a permit and cannot bring an enforcement action because of an exemption, the public interest in maintaining the waters of this state falls by the wayside in the event lake conditions change. The DNR should not be so hamstrung in fulfilling its duty.
II
¶ 67 Because I determine that the DNR has the necessarily implied authority to amend the Myers' pier permit, I briefly address the Myers' arguments that statutory exemptions bar such permit amendments.[4] The Myers cite to two statutory exemptions in an *203 attempt to avoid the DNR's permit amendments. First, they assert that the grandfather exemption, Wis. Stat. § 30.12(1k)(b), applies to their pier. Second, they contend that the enforcement exemption, § 30.12(1k)(cm), bars the permit amendments in this case. Neither provision has the effect the Myers desire.
¶ 68 The grandfather exemption, Wis. Stat. § 30.12(1k)(b), provides in relevant part:
[A] riparian owner of a pier or wharf that was placed on the bed of a navigable water before April 17, 2012, is exempt from the permit requirements under this section unless any of the following applies:
1m. The department notified the riparian owner before August 1, 2012, that the pier or wharf is detrimental to the public interest.
2. The pier or wharf interferes with the riparian rights of other riparian owners.
¶ 69 If the grandfather exemption applies, the consequences are set forth in Wis. Stat. § 30.12(1k)(e) :
[A] riparian owner who is exempt ... may do all of the following:
1. Repair and maintain the exempt structure without obtaining a permit from the department under this section unless the owner enlarges the structure.
2. If the exempt structure is a pier or wharf, relocate or reconfigure the pier or wharf if the riparian owner does not enlarge the pier or wharf.
In other words, if the exemption applies, the Myers need not obtain a permit to repair and maintain the pier.
*204 ¶ 70 The DNR contends that the grandfather exemption does not apply here because the Myers possess a permit for their pier. I agree. The grandfather exemption states that if the conditions are met, a pier owner is not required to "obtain" a permit in order to maintain the pier. Wis. Stat. § 30.12(1k)(e)(1). The use of the word "obtain" indicates that a pier covered by the statute did not have a permit before, hence the need to "obtain" one. As analyzed above, I determine that the Myers' pier was permitted. Accordingly, the grandfather exemption does not apply.
*61 ¶ 71 Similarly, the enforcement exemption does not apply. The enforcement exemption provides:
The department may not take any enforcement action under this chapter against a riparian owner for the placement of any of the following:
1. A structure for which the department has issued a permit under this section, if the structure is in compliance with that permit.
2. A structure for which the department has issued a written authorization, if the structure is in compliance with that written authorization.
3. A structure that is exempt under par. (b) [the grandfather exemption].
Wis. Stat. § 30.12(1k)(cm).
¶ 72 Any argument that this exemption is applicable must be based on the premise that DNR's actions here in amending the permit constitute an "enforcement action." This premise fails.
¶ 73 Pursuant to chapter 30 of the Wisconsin statutes, the DNR can remedy a defect in a pier by following one of two tracks: permit amendment by *205 way of its necessarily implied authority or enforcement via Wis. Stat. § 30.03. In this case, the DNR chose to follow the permit amendment track. The DNR did not bring an "enforcement action" here, thus the "enforcement" exemption is not applicable.
¶ 74 There are key differences between the permit amendment and enforcement tracks. An enforcement action is brought pursuant to Wis. Stat. § 30.03. Enforcement hearings proceed in accordance with ch. 227. See § 30.03(4)(a). The end result of an enforcement action can be an order issued by a hearing examiner "directing the responsible parties to perform or refrain from performing acts in order to comply with s. 281.36 or to fully protect the interests of the public in the navigable waters." § 30.03(4)(a).
¶ 75 That is not what happened in this case. Here there was only a public informational hearing. A hearing examiner did not enter any injunction against the Myers. Rather, the DNR issued a permit amendment. Because there was no enforcement action, the enforcement exemption is inapplicable.
¶ 76 In sum, the majority allows a pier with clear defects to remain in a state of disrepair and impairment of the public interest. The impact of the majority opinion, however, is not limited to the Myers' pier. On bodies of water large and small, the majority opinion raises the specter that riparian owners cannot rely on the DNR to protect the public interest if a neighboring pier stops working as intended due to shifting lake conditions. Because this result is contrary to the legislative intent, I respectfully dissent.

See State v. Sample, 215 Wis. 2d 487, ¶ 21, 573 N.W.2d 187 (1998) ("For purposes of statutory interpretation or construction, the common and approved usage of words may be established by consulting dictionary definitions.").

Two examples offered are "the strategic placement of products at the entrance of a store" and "the placement of microphones around the room."

An enforcement action can be maintained for "a possible violation of s. 281.36 or of the statutes relating to navigable waters or a possible infringement of the public rights relating to navigable waters." Wis. Stat. § 30.03(4)(a).

The Myers also argue that the evidence presented at the informational hearing was insufficient to support the permit amendment. The DNR made the following factual finding:
Based on the information gathered and further discussion with the Sea Grant coastal engineer, the Department has determined that the existing 12-foot flow-through opening is not functioning as intended consistently enough to provide sufficient movement of water and sediment on a regular basis to prevent the interruption of the natural littoral processes. This disruption, in turn, is exacerbating the formation of land on the bed of Lake Superior and starving adjacent 'down-drift' properties of sediment.
Such a finding is certainly sufficient to support the determination that the pier is detrimental to the public interest.